**Alice DOHNER, Plaintiff,**

v.

**H. Weldin NEFF, et al., Defendants.**

**No. 3:98CV7302.**

United States District Court,
N.D. Ohio,
Western Division.

Dec. 11, 2002.

694

Harland M. Britz, Britz & Zemmelman, Toledo, OH, for Plaintiff.

Dean Charles Henry, Tiffin, OH, Richard M. Kerger, Kerger & Kerger, Toledo, OH, Robert H. Willard, Reminger & Reminger, Columbus, OH, James D. Caruso, Arnold & Caruso, Toledo, OH, John E. Vincent, Mark D. Landes, Sonia T. Walker, Isaac, Brant, Ledman, & Teetor, Timothy S. Rankin, Rankin Law Offices, Columbus, OH, for Defendants.

## ORDER

CARR, District Judge.

Plaintiff Alice Dohner brings this suit against defendants H. Weldin Neff, individually and in his official capacity as Sheriff of Seneca County, Ohio; Dennis A. Smith, individually and in his official capacity as *de-facto* Deputy Sheriff and/or agent for H. Weldin Neff; and Kenneth E. Estep, Janet A. Dell, and Jeffrey D. Wagner—members of the Board of Commissioners of Seneca County, Ohio ("County Defendants"). Plaintiff asserts federal claims under 42 U.S.C. §§ 1983 and 1985(3), state claims under the Ohio Constitution, and state common-law tort claims. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

Pending are motions by all defendants for summary judgment on the § 1983 and § 1985(3) claims. For the following reasons, Neff and Smith's motion shall be granted in part and denied in part and the County Defendants' motion shall be granted.

## BACKGROUND

From 1989 to April 17, 1998, plaintiff worked as a civilian dispatcher for the Seneca County, Ohio Sheriff's Department ("Sheriff's Department"). Plaintiff was an exempt employee under the Sheriff's Department Bargaining Unit, which meant she could only be discharged for cause.

From 1989 to 1997, plaintiff worked under Sheriff Runion and Sheriff Stephens. During that period, plaintiff's husband, Rick Dohner, was the Department's Chief Deputy. Stephens, Runion, Alice Dohner, and Rick Dohner were members of the local Democratic Party.

In 1996, defendant Neff, a Republican, was elected Sheriff, defeating Stephens. Neff assumed the Sheriff's office on January 1, 1997. Plaintiff continued to work for the Department as a civilian dispatcher after Neff's election.

Defendant Smith is Neff's friend and political ally. Smith is not an employee of the Sheriff's Department. He occasionally performed chores, such as picking up and delivering mail to and from the courthouse, for the Sheriff's Department. After the 1996 election, Smith was in and around the Sheriff's office four or five days a week.

Plaintiff alleges that, at various times before the 1996 election, after the election, and after Neff assumed office, defendants Neff and Smith engaged in repeated stalking, aggravated menacing, intimidation, and coercion. The complaint asserts that Neff and Smith individually, and in concert and as coconspirators, committed criminal, unconstitutional, and tortious acts against her. Those actions, plaintiff contends, made her continued employment with the Department intolerable, and compelled her to quit her job. Thus, the gravamen of plaintiff's complaint is that Neff and Smith caused her constructive discharge.

■ Plaintiff's allegations against Smith include: 1) Smith pulled up beside plaintiff's vehicle yelling, screaming, and making faces; 2) while plaintiff and her husband were shopping, Smith told a salesman that they did not pay their state sales taxes and discouraged him from selling anything to them; 3) during the 1996 election, Smith handed out sheets of toilet paper, stating "wipe out corruption," with Sheriff Stephens' and Rick Dohner's picture on them; 4) Smith repeatedly drove by plaintiff's home at a slow rate of speed; 5) Smith attempted to run into plaintiff with his semi-tractor trailer; 6) after Neff became Sheriff, Smith visited Neff and made intimidating faces and gestures towards plaintiff while she was working; 7) Smith would enter plaintiff's workstation through a security-coded door that Neff provided to Smith; and 8)

Smith followed her on several occasions while she was shopping or banking.[1]

Defendant Neff, according to the complaint: 1) allowed Smith to be on the premises of the Sheriff's office after plaintiff complained nineteen times to Neff about Smith's intimidating behavior, 2) denied plaintiff's request to carry her firearm during her dispatcher shift; 3) reprimanded plaintiff for putting calls through to his office; 4) hired Randy Hamilton, who was politically opposed to Rick Dohner and a tenant of Smith, as plaintiff's supervisor; 5) ordered a bogus investigation into plaintiff's alleged misuse of the LEADS system; 6) watched over the dispatch center from an adjacent darkened room and stared at plaintiff; 7) pretended to be leaving the premises but would instead move his vehicle and come back into the building; 8) left a package including an employment application for Smith to pick up at the Sheriff's office during plaintiff's shift so she would believe Smith was going to work at the Sheriff's Department as a dispatcher; 9) pinned her badge upside down in the Sheriff's display case following plaintiff's resignation.

Plaintiff caused criminal charges to be filed against Neff and Smith. Smith was convicted of Menacing by Stalking and Complicity in the Seneca County Common Pleas Court. Neff was acquitted of similar charges.

The actions attributed to Neff and Smith, plaintiff contends, constituted a conspiracy to force her to quit her job in violation of various constitutional rights. Her complaint alleges six causes of action.

Count One, brought under § 1983, claims that defendants Neff and Smith, acting under color of state law, deprived plaintiff of her First Amendment right of freedom of association, Fourth Amendment right of privacy; Fourteenth Amendment rights to due process and equal protection.

Count Two, brought under § 1985(3), claims that defendants Neff and Smith conspired to deprive plaintiff of her constitutional rights to force her to resign from her job. Plaintiff alleges Neff and Smith conspired because plaintiff had served under and supported the former Sheriff and because she was married to Rick Dohner, who also worked under and supported the former Sheriff.

Count three is based on violations of the Ohio Constitution.

Count Four, brought under § 1983, § 1985(3), and the Ohio Constitution, claims that Neff was deliberately indifferent to plaintiff's clearly established constitutional rights, and, as a policy maker for the Sheriff's Department, Neff's acts constitute official policy of Seneca County, Ohio, making the County liable for Neff's misconduct. Also, plaintiff alleges that Neff's acts demonstrate a custom within the Sheriff's Department of abuse of governmental authority. This custom, according to plaintiff, was known or should have been known to those with the authority to remedy it—the Seneca County Board

---

**1.** Defendants argue that the events occurring prior to January 1, 1997—the date Neff became Seneca County Sheriff—should be precluded from consideration because the conduct cannot be considered "under color of state law." Defendants are correct in that any acts before January 1, 1997 cannot form the basis for liability because at that time, neither Neff nor Smith was a state actor. These acts, however, would be admissible to show intent to harass under Rule 404(b) of the Federal Rules of Evidence. *See, generally Hammann v. Hartford Acc. and Indem. Co.,* 620 F.2d 588, 589 (6th Cir.1980) (Rule 404(b) evidence admissible to show intent in civil cases); *see also Wilson v. Muckala,* 303 F.3d 1207, 1217 (10th Cir.2002) (prior acts of harassment admissible to show intent in employment discrimination case).

member defendants Estep, Dell, and Wagner. Their deliberate indifference to Neff's misconduct, plaintiff alleges, makes them liable for the damages she suffered from that misconduct.

Counts Five and Six assert state law claims of intentional infliction of emotional distress and assault.

Defendants Neff and Smith seek summary judgment on Counts One and Two. The County Defendants seek summary judgment on Count Four. For the following reasons, the motion of defendants Neff and Smith shall be granted in part and denied in part. The County Defendants' motion shall be granted.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather,

Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

### I. Count One: § 1983

Defendants Neff and Smith argue plaintiff's § 1983 claim must fail as a matter of law because Smith was not a state actor and the allegations against Neff are subject to the defense of qualified immunity.

#### A. State Action

■ Section 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ By its terms, § 1983 applies only to persons acting "under color of" state law. Purely private conduct does not come within the statute. Acting "under color of" state law for § 1983 actions, however, does not necessarily require that the defendant be a state officer or employee: "It is enough that [the private person] is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27–29, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (§ 1983 applicable to store employee who agreed with a police officer to deny service on the basis of plaintiff's race); *Cooper v. Parrish*, 203 F.3d 937, 952 n. 2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983.").

Plaintiff alleges that defendant Neff conspired with Smith to scare plaintiff into leaving her job or to make her work environment so hostile that she could not reasonably be expected to continue, thereby causing her to be constructively discharged. In addition to her allegations about harassment, intimidation, and stalking, plaintiff has submitted the testimony of Cora Bour, who states that she heard a discussion between Smith and Neff after Sheriff Neff took office about what to do with plaintiff. Plaintiff further provides evidence that Sheriff Neff knew how fearful and uncomfortable plaintiff was with Smith but continued to allow Smith on the Sheriff Department's premises, that Sheriff Neff wanted plaintiff to believe that Smith may become employed at the Sheriff's Department, and that Sheriff Neff may have provided Smith with the security access code to the doors of the Sheriff's

Department. This evidence would enable a reasonable jury to find that Neff and Smith conspired and worked jointly and in concert to constructively discharge the plaintiff.

■ A constructive discharge occurs where "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir.1982). Although an " 'employee may not be unreasonably sensitive to his working environment,' " constructive discharge will be found " 'when a reasonable person would find conditions intolerable.' " *Henry v. Lennox Inds., Inc.* 768 F.2d 746, 752 n. 3 (6th Cir.1985) (citing *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981)). A finding of constructive discharge in the Sixth Circuit requires an inquiry into both the objective feelings of an employee, and the intent of the employer. *Held*, 684 F.2d at 432.

Accepting all of plaintiff's allegations as true, a rational jury could find that Neff and Smith sought to cause the plaintiff to leave her job with the Department and they created working conditions that any reasonable person would find to be intolerable. Because the defendants engaged in their actions under color of law, they come within § 1983.

**B. Qualified Immunity**

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court adopted an objective test to determine if a state actor enjoyed qualified immunity:

We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established stat-

utory or constitutional rights of which a reasonable person would have known.

■ The Sixth Circuit has adopted a two part test for determining whether public officials are entitled to qualified immunity. Under the *Harlow* standard, a court must first determine whether the plaintiff has alleged a deprivation of a constitutionally protected right. If so, "then the second step is to determine whether the right is so 'clearly established' that a 'reasonable official' would understand that what he is doing violates that right.'" *Brennan v. Township of Northville,* 78 F.3d 1152, 1154 (6th Cir.1996) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

### 1. Qualified Immunity for Neff

■ To find a clearly established constitutional right, a district court must find binding precedent from the Supreme Court, its court of appeals, or itself. *Ohio Civil Serv. Employees Ass'n. v. Seiter,* 858 F.2d 1171, 1177 (6th Cir.1988). In this case, plaintiff alleges Sheriff Neff violated rights under the First, Fourth, and Fourteenth Amendments.

#### a. First Amendment

■ Plaintiff alleges violations of the First Amendment right to, without suffering adverse employment consequences, be free to: 1) associate with members of one political party—in this case, her husband; 2) marry and remain married to a member of one political party; and 3) marry and remain married to a political party member, who has served under and actively

supported the political opponent of government superiors.

In *Elrod v. Burns,* 427 U.S. 347, 372–73, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 514–15, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court held that public agencies cannot discharge employees, except those in policymaking or advisory positions, on the basis of the employee's political affiliations. In the Court's view, an employee's exercise of First Amendment rights outweighs the government's interest in maintaining a system of political patronage.

■ Thus, it is a clearly established right that public employees may not, under the federal Constitution, be dismissed for political reasons, unless the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the office involved.

■ Plaintiff's First Amendment claim, however, does not allege that she was constructively discharged based on *her* political affiliation.[2] Plaintiff alleges that she was discharged based on her association with her husband, who was a political foe of her superior. For plaintiff to succeed, she must allege a deprivation of a clearly established constitutional right that she cannot be discharged based on her relationship with her husband, a political opponent of her superior.

In the Sixth Circuit a spouse has a constitutional right under the First Amendment to be free from retaliation on the basis of family association. *Sowards v. Loudon County,* 203 F.3d 426 (6th Cir.

---

**2.** To the extent that plaintiff may be alleging that she was discharged based on her own political affiliation, she has not provided sufficient evidence to sustain her claim. To make out a prima facie case, public employees who claim that they suffered from an adverse employment action based on their exercise of a constitutional right must show that they

worked for a public agency in a position that does not require a political affiliation, they were engaged in constitutionally protected conduct, and the conduct was a substantial or motivating factor in the government's decision. *See e.g., Kreuzer v. Brown,* 128 F.3d 359, 365 (6th Cir.1997).

2000); *Adkins v. Bd. of Educ. of Magoffin County,* 982 F.2d 952 (6th Cir.1993).

In *Sowards,* the plaintiff sued a Sheriff and County under § 1983 claiming that she was terminated from her position as a jailer in retaliation for exercising her First Amendment rights of political and intimate associations. The plaintiff's husband unsuccessfully ran against the defendant Sheriff. As in this case, the plaintiff in *Sowards* alleged that her termination was due to her marriage to her husband.

The court set forth three elements that a plaintiff must prove to establish a claim for retaliation on the basis of family relationships:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

203 F.3d at 431 (citations omitted).

The court held that plaintiff's marriage was "protected conduct" and that a First Amendment right of intimate association protected her against loss of her job on the basis of her marital relationship with her husband.

The court cited *Roberts v. United States Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), in which the Supreme Court stated that one type of constitutionally protected freedom of association is the right "to enter into and maintain certain intimate human relationships [which] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme."

The court in *Sowards* also referenced its earlier decision in *Adkins,* in which the court had held that a plaintiff had a liberty interest in not being denied employment for exercising her First Amendment right to freedom of association. In that case, the plaintiff was married to the principal of the high school and was also employed as his secretary. The plaintiff alleged that the superintendent, who had a dispute with the plaintiff's husband, failed to rehire her to punish the plaintiff for her espousal affiliation. 982 F.2d at 955. Finding a violation of the First Amendment, the court in *Adkins* stated:

[I]t is not necessary that the governmental act require the abandonment or dissolution of a marriage relationship as the price for retaining public employment. The right of association is violated if the action constitutes an "undue intrusion" by the state into the marriage relationship.

*Id.* at 956.

In light of these cases, a rational jury could find, on the basis of the totality of the evidence that Neff sought to force the plaintiff to quit her job due to her marital relationship with her spouse, who was politically opposed to Neff, and had worked against his election. In addition, a jury could find, as required by *Sowards,* 203 F.3d at 433–34, that Neff caused the plaintiff to suffer an injury (loss of her job) that would likely chill a person of ordinary firmness from continuing to engage in her constitutionally protected conduct. The jury could also find that Neff was substantially motivated by plaintiffs exercise of her constitutional rights (her marriage to her husband).

In *Hall v. Tollett,* 128 F.3d 418, 426–27 (6th Cir.1997), the court held that the plaintiff had failed to show that newly elected Sheriff knew which candidate the plaintiff had supported. In this case, in contrast, it is clear that Neff was well aware that plaintiff's husband opposed his election. A reasonable jury could find that

Neff's awareness of that opposition engendered his antagonism and his hostile acts, and those undertaken by Smith, against the plaintiff, and that those acts caused her constructive discharge.

To be sure, the proof may not be as compelling as it was in *Sowards,* 203 F.3d at 434, where the defendant admitted that he may not have terminated plaintiff had she been a staunch supporter, rather than the wife of his political opponent, or in *Adkins,* 982 F.2d at 954, in which the defendant had told the plaintiff that she was not rehired because "I can't get rid of [your husband], and you're the next best thing." A reasonable jury could conclude, on the basis of the entire record viewed most favorably for the plaintiff that Neff shared the same feelings, acted accordingly, and caused plaintiff to quit working for him.

Neff would not be entitled to qualified immunity as to this claim because, in light of *Adkins,* a public employee's right to remain employed regardless of her spousal affiliation was clearly established in our circuit. Neff knew or should have known that he could not seek plaintiff's termination simply because she was married to his political opponent.

### b. Fourteenth Amendment Due Process

### 1. Procedural Due Process

■■■■ To prevail on a § 1983 due process claim, a plaintiff must show that government action deprived him or her of a legally cognizable interest in life, liberty, or property. Once plaintiff has established such interest, she must show that the defendants deprived her of that interest without affording due process.

■■■■ As the Supreme Court stated in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), a property interest protected by the Fourteenth Amendment exists where the plaintiff has a "legitimate claim of entitlement" to continued employment, and that such claim was created by "existing rules or understandings that stem from an independent source such as state law."

■■■■ A property interest in a job exists when a government employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met. *See Buttitta v. City of Chicago,* 9 F.3d 1198, 1202 (7th Cir.1993). In this case plaintiff had a property interest in her position with the Sheriff's Department because she could not be removed except for just cause. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (the state's civil service statute, providing that civil service employees may be terminated only for good cause and are entitled to administrative review of termination decisions, created for such employees a protected property interest in continued employment).

■■■■ Once a plaintiff established the deprivation of a protected property interest, the plaintiff must then prove that the defendants deprived her of that interest without affording her due process of law; i.e., without giving her notice of the termination and an opportunity to be heard before she loses her job. *See id.* at 542, 105 S.Ct. 1487. In the context of constructive discharge, the employee is neither given notice nor an opportunity to be heard.

Because plaintiff had a right to continued public employment and that right was taken away from her without due process of law, she could prevail on her § 1983 due process claim. Defendants' motion for summary judgment on the Fourteenth Amendment procedural due process claim shall be denied.

## 2. Substantive Due Process

 The test frequently used by courts in resolving substantive due process claims entails a determination of whether the state actor's conduct was such as to "shock the conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). To pass this test, the conduct must be so egregious as to violate society's ideas of decency and fair play. *Id.* at 847, 118 S.Ct. 1708; *see also Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property.")

Plaintiff alleges her substantive due process rights were violated by defendants' continuous and repeated stalking, harassment, menacing, intimidation, and other conscience-shocking affirmative abuses of governmental authority that ultimately led to her constructive discharge.

 Unlike procedural due process, substantive due process reaches only those employment decisions affecting constitutionally protected "fundamental rights" of an employee, such as the rights protected under the Bill of Rights. *Regents of the Univ. of Michigan v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, concurring) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution."); *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994) ("The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.' " (citations omitted)).

Plaintiff's property interest in her job is based on the collective bargaining agreement—not the federal Constitution or its Bill of Rights. Thus, she has not alleged the deprivation of a "fundamental right," and, therefore, plaintiff cannot prevail on this claim. Defendants motion for summary judgment shall, accordingly, be granted as to plaintiff's substantive due process claim.

### c. Fourth Amendment

 Plaintiff alleges defendant Smith's use of the security code to the Sheriff's Department violated her right to be free from invasions of privacy in secure and restricted work stations or areas by persons who are improperly given access to such areas for the purpose of intimidation and harassment. The Supreme Court has concluded that a government employees' Fourth Amendment rights are implicated only if state actors infringe "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

An employee's expectation of privacy in a workplace or commercial setting is often less than her expectation of privacy in her home. *Blake v. Wright,* 179 F.3d 1003, 1009 (6th Cir.1999). Plaintiff simply has not shown that any expectation of privacy that she may have had in the public setting of her work area would have been objectively reasonable. Defendants are entitled to summary judgment as to plaintiff's Fourth Amendment claim.

### d. Fourteenth Amendment Equal Protection

 Plaintiff's equal protection claim likewise is without merit. Plaintiff cannot sustain such claim without a showing of intentional discrimination on the basis of membership in a protected class. *Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 341 (6th Cir.1990). This case involves none of the classifications that merit heightened equal protection scrutiny (i.e., race, gender, disability, or age). To the

extent that plaintiff's complaint may allege an equal protection claim on the basis of her gender, she has presented no evidence to support such contention. Defendants are entitled to summary judgment as to plaintiff's Fourteenth Amendment equal protection claim.

### e. Qualified Immunity for Smith

■ Defendants assume that Smith did not qualify as a state actor; therefore, they did not raise the defense of qualified immunity for Smith. Nonetheless, it is well-settled that, though a private party who conspires with a state official to violate constitutional rights can be liable under § 1983, such individual cannot defend on the basis of qualified immunity. A "party who is not a public official may be liable pursuant to 42 U.S.C. § 1983 and yet not be entitled to qualified immunity because, if not a public official, the reason for affording qualified immunity does not exist." *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698 (6th Cir.1996); *see also Wyatt v. Cole*, 504 U.S. 158, 168–69, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

### II. COUNT TWO: § 1985(3)

■ Section 1985 (3) provides:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ....

■ Like § 1983, this section creates no new substantive rights, but is merely an enforcement vehicle for rights derived from other legal sources.

In *United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Supreme Court held that plaintiff must prove four elements to succeed under § 1985(3):

(1) a conspiracy; (2) for purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

In *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Court held that the "language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Because the facts of *Griffin* revealed an animus against African–Americans and those who supported them, which was the central concern of Congress in enacting § 1985(3), the Court expressly declined to decide "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under the portion of § 1985(3)." *Id.* at 102 n. 9, 91 S.Ct. 1790.

In *Carpenters*, the Court addressed this issue and found that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against [African–Americans] and those who championed their cause" 463 U.S. at 836, 103 S.Ct. 3352. The Court only concluded, however, that § 1985(3) does not "reach conspiracies motivated by economic or commercial animus." *Id.* at 838, 103 S.Ct. 3352.

Since the decision in *Griffin* and *Carpenters*, lower courts are split on the issue of whether non-racial categories are covered by § 1985(3). The Sixth Circuit has held that the protections of § 1985(3) extend beyond the realm of purely racial animus. *See e.g., Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir.1991) (finding that women constitute a cognizable class under § 1985(3) because "[g]ender is precisely the type of 'immutable characteristic' that has consistently been held an improper basis upon which to differentiate individuals in the allocation of rights."); *Conklin v. Lovely*, 834 F.2d 543, 549–50 (6th Cir.1987) (holding that § 1985(3) extends to animus directed against political views); *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980) (interpreting § 1985(3) to hold that "the class of individuals protected by the 'equal protection of the laws' language of [§ 1985(3)] are those so-called 'discrete and insular' minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics").

Plaintiff asserts that Neff and Smith conspired to cause her constructive discharge in violation of the First, Fourth, and Fourteenth Amendments.

As to plaintiff's First Amendment claim, the Sixth Circuit has concluded that a group of persons holding similar political views can be a "class of persons" for purposes of § 1985(3). The Sixth Circuit has found that § 1985(3) reaches "clearly defined classes, such as supporters of a political candidate." *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir.1973); *see also Conklin*, 834 F.2d at 549; *Glasson v. City of Louisville*, 518 F.2d 899, 911–12 (6th Cir.1975) (holding that individuals who are critical of government officials may constitute a clearly defined class for § 1985(3) purposes).

The court's decisions in *Conklin, Cameron,* and *Glasson* suggest that all registered Democrats would constitute a clearly defined "class of persons" for purposes of § 1985(3). Plaintiff, however, does not claim that the defendants were motivated by her political affiliation. She claims, rather, that her marital association with her husband, who was politically opposed to Neff, motivated their actions.

Plaintiff's association with and marriage to a member of a political party does not, however, place her in a group that constitutes a "clearly defined class" of the sort that § 1985(3) protects. Thus, plaintiff cannot prevail on her § 1985(3) First Amendment claim. *See Rice v. Ohio Dep't of Transp.*, 887 F.2d 716, 722 (6th Cir. 1989) (finding no § 1985(3) class-based consideration for a plaintiff who claimed he was denied a promotion for failing to engage in political activity on behalf of the party that was in power because the degree of political activity engaged in by members of the same political party is too uncertain a standard for delineating "clearly defined classes" of the sort § 1985(3) was designed to protect).

Moreover, as the Sixth Circuit stated in *Taylor v. Brighton Corp.*, 616 F.2d 256, 265 (6th Cir.1980):

Section 1985(3) is concerned only with conspiracies to deny equality of rights. Referring to § 1985(3)'s legislative history, the Court in *Griffin v. Breckenridge* found that Congress inserted the language "equal protection of the laws" and "equal privileges and immunities under the laws" by amendment as a means of limiting the "enormous sweep of the original language," which would have made criminal any conspiracy to violate "the rights, privileges, or immunities of another person." Thus, the gravamen of a claim under § 1985(3) is denial of equal protection or equal privileges and

immunities; a conspiracy to deny everyone a given right is not actionable. The *Griffin* Court imposed the class-based-animus requirement as a means of confining § 1985(3) to its intended purpose: to provide a means of redressing deprivations of equality under the law.

As the court recognized in *Taylor*, a plaintiff's beliefs, not her conduct, defined the classes recognized in *Cameron* and *Glasson*. In those cases, the plaintiffs supported dissident political points of view. Their conduct in distributing campaign pamphlets (*Cameron*) or carrying placards critical of the President (*Glasson*) was relevant only because such conduct identified them as dissidents. But their membership in the dissident class, rather than their conduct, had led to discriminatory treatment. *Id.* at 266.

Plaintiff in this case does not allege she was treated unfairly because she was a member of a particular group. Because her complaint does not allege that class-based animus motivated the defendants, it fails to state a claim under § 1985(3).

■ Similarly, plaintiff has not satisfied the requirement of racial or other class-based, discriminatory animus with regard to the alleged Fourth and Fourteenth Amendment violations. She does not allege the existence of a conspiracy directed at her because of her membership in a clearly defined class. Therefore, summary judgment is proper with regard to plaintiff's § 1985(3) claim. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992).

### III. COUNT FOUR: COMMISSIONERS' LIABILITY

■ County Defendants—including the members of the Seneca County Board of Commissioners in their official capacities, Seneca County, and Sheriff Neff in his official capacity—seek summary judgment on the basis, inter alia, that none of the alleged constitutional violations arose from a sanctioned custom, policy, or procedure of Seneca County and respondeat superior does not provide the basis for liability against them.

■ A governmental employer may be liable under § 1983 only on the basis of its official policies or customs. As the Supreme Court stated in *Monell v. Dep't of Social Servs.* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978):

Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

■ The "official policy" restriction bars respondeat superior liability against local governmental bodies. *Id.* at 691, 98 S.Ct. 2018. Recovery can, however, be had "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91, 98 S.Ct. 2018.

In *City of St. Louis v. Praprotnik*, 485 U.S. 112, 113, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), a plurality of the Supreme Court held that an "official policy" is a policy adopted by someone with final policymaking authority with respect to the action ordered. Plaintiff argues that Sheriff Neff exercises policymaking authority; therefore, County Defendants are liable for his acts.

In *Pembaur v. Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Court had explained:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.

In *Pembaur* the Court demonstrated how narrowly "final policymaker" is defined:

> For example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability.... Instead, if county employment policy was set by the Board of County Commissioner, only that body's decision would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decision *would* represent county policy and could give rise to municipal liability.

475 U.S. at 483 n. 12, 106 S.Ct. 1292.

Plaintiff has not submitted sufficient evidence to enable a rational jury to find that it was more likely than not that Neff, in his official capacity as County Sheriff, was given authority to set employment policy for Seneca County. Thus, even if Neff caused plaintiff's constructive discharge in an unconstitutional manner, there is not enough evidence to show that he was acting in furtherance of a policy established by the County Board of Commissioners.

The case is similar to *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505 (6th Cir.1991), in which the plaintiff sued the school board and other individuals, including the school superintendent who recommended that the board not renew her contract. The board, which under Ohio law had final authority to establish employment policy and to make contract renewal decisions, accepted the superintendent's recommendation. The plaintiff presented no evidence the board knew that the Superintendent's recommendation was motivated by discriminatory animus. On motion for summary judgment, the court dismissed the board as a defendant because the plaintiff failed to show that the board had a policy to discriminate or that the board ratified the alleged discriminatory acts. *Id.* at 511–12.

Thus, because plaintiff has not provided evidence that the County Defendants had a custom or practice of denying employees their constitutional rights, their motion for summary judgment shall be granted.

## CONCLUSION

It is, therefore,

**ORDERED THAT**

1. Defendants Neff and Smith's motion for summary judgment be, and hereby is, granted as to plaintiff's § 1983 Fourth Amendment and Fourteenth Amendment substantive due process and equal protection claims and her § 1985(3) claims;

2. Defendants Neff and Smith's motion for summary judgment be, and hereby is, denied as to plaintiff's § 1983 First Amendment and Fourteenth Amendment procedural due process claim; and

3. County Defendants' motion for summary judgment be, and the same hereby is granted as to all of plaintiff's federal constitutional claims.

**So ordered**