982 F.2d 952
 61 Fair Empl.Prac.Cas. (BNA) 252,
61 Empl. Prac. Dec. P 42,082, 61 USLW 2531,
80 Ed. Law Rep. 60, 8 IER Cases 321
 Margie Jo ADKINS, Plaintiff-Appellant,
v.
BOARD OF EDUCATION OF MAGOFFIN COUNTY, KENTUCKY, and Carter
Whitaker, individually, and in his official
capacity as Superintendent of the
Magoffin County Schools,
Defendants-Appellees.
 No. 91-6353.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 8, 1992.
Decided Jan. 5, 1993.
 
 Arthur L. Brooks (argued and briefed), [COR NTC ret], Brooks, Coffman & Fitzpatrick, Lexington, KY, for plaintiff-appellant.
 Robert L. Chenoweth (argued), [COR NTC ret], Bryan, Fogle & Chenoweth, Frankfort, KY, and John C. Fogle, III (briefed), [COR NTC ret], Bryan, Fogle & Chenoweth, Mt. Sterling, KY, for defendants-appellees.
 Before MILBURN and NORRIS, Circuit Judges; and LIVELY, Senior Circuit Judge.
 LIVELY, Senior Circuit Judge.
 
 
 1
 In this civil rights action the plaintiff claimed that the defendants violated her First Amendment rights of privacy and association by refusing to continue her public employment. More specifically, the complaint alleged that the superintendent of a county school system refused to recommend the plaintiff for continuation in her classified position to punish the plaintiff "for affiliation and association with her husband and others with whom she had a right to associate." The district court dismissed the board of education prior to trial and granted a directed verdict in favor of the superintendent at the close of the plaintiff's case at trial before a jury. We affirm in part, reverse in part, and remand for further proceedings.
 
 I.
 
 2
 The plaintiff sued under 42 U.S.C. § 1983, claiming that the actions of the superintendent, Carter Whitaker, and the county board of education (the Board) violated rights guaranteed by the First and Fourteenth Amendments. The superintendent was sued in both his individual and official capacities. The complaint sought compensatory damages against both defendants in addition to a permanent injunction requiring the defendants to restore the plaintiff to her former position with back pay and all benefits to which she would have been entitled except for the defendants' actions.
 
 A.
 
 3
 In reviewing a judgment based on a directed verdict, we view the evidence in the light most favorable to the plaintiff. Thus, we recite the facts as revealed by the plaintiff's testimony and other evidence presented on her behalf.
 
 
 4
 The plaintiff began working in the Magoffin School system in January 1984, as a clerk in the Vocational School. In 1985, she became a clerk in the high school serving under the principal. At that time the principal was Ronnie Gullett. In July 1987, her husband, Diral Adkins, was assigned as principal of the high school and the plaintiff concurrently was promoted by the defendants to be the principal's secretary. The plaintiff did not have any tenure rights and she worked under a year to year contract.
 
 
 5
 The plaintiff testified that tension began to develop in the spring of 1988. At that time, according to Diral Adkins, the defendant Whitaker exerted pressure on him to create documentation on five teachers so he, Whitaker, could fire them. Diral Adkins testified that he first avoided responding to Whitaker but finally was ordered to have an evaluation immediately on a teacher named Winnie Gardner. The evaluation was favorable and Diral Adkins testified that this made Whitaker angry. The plaintiff testified that Whitaker asked her for information on how many days one of the teachers had been late. The plaintiff did not provide the requested information and stated at trial that she did not, because she felt that it was wrong to single out one teacher. The plaintiff admitted that all of her knowledge regarding the alleged false documentation request came from her husband.
 
 
 6
 Diral Adkins then testified that while he was meeting with Whitaker in May of that year he was informed that his wife would probably not be rehired. Diral Adkins testified that Whitaker conceded that the plaintiff was doing a good job but stated "why hire her when you're going to be mad at me?"Mrs. Adkins was not hired for the next school year. The decision to recommend her for employment rested with Superintendent Whitaker. (Under Kentucky law at the time, the superintendent's recommendation to the school board was a mandatory prerequisite for employment.) The plaintiff testified that after she was not rehired, she went to discuss the situation with Whitaker. She stated that he told her "you're a good secretary; I have no problems at all with your work. But I can't hire you back because you're going to be mad at me, anyway, because I am going to fire Diral." Then, according to the plaintiff, he added, "I can't get rid of Diral, and you're the next best thing." The plaintiff testified that these were the only reasons given for the decision prior to the lawsuit.
 
 
 7
 Whitaker testified in a deposition that the plaintiff was not rehired because he could not get a handle on the situation in the high school for the reason that Mrs. Adkins was more loyal to the principal than she was to her job.
 
 
 8
 Diral Adkins was subsequently demoted to an elementary principal and now is a health teacher at the high school.
 
 
 9
 Not only did Whitaker refuse to recommend that Mrs. Adkins be rehired as secretary to the principal; he refused to recommend her for any employment in the school system for the 1988-89 school year.
 
 B.
 
 10
 Prior to trial Whitaker moved for summary judgment on grounds of qualified immunity and he and the Board moved to dismiss the action on grounds of Eleventh Amendment immunity, the fact that the Board is not a "person" under § 1983 and that Whitaker did not act pursuant to board policy. The district judge to whom the case was then assigned denied Whitaker's motion for summary judgment on qualified immunity grounds. The judge stated that the United States Supreme Court has recognized a constitutional right of privacy and association in the marriage relationship. The court found that in her pretrial discovery the plaintiff had presented facts from which a jury could have determined that the defendants denied employment to the plaintiff because of her marriage relationship rather than for any legitimate reason related to operation of the school system.
 
 
 11
 In a later order, the judge granted in part the defendants' motion to dismiss the Board and Whitaker in his official capacity. Finding that the Board is an "extension of the Commonwealth of Kentucky" rather than an independent local governmental unit, the judge concluded that the Eleventh Amendment shields the Board and Whitaker in his official capacity from any claim for money damages. Because the Eleventh Amendment does not prohibit equitable relief against a state entity, the judge declined to dismiss the claim for injunctive relief against Whitaker in his official capacity, but dismissed the Board from the case with prejudice.
 
 
 12
 The case was then reassigned to a different district judge. He denied the plaintiff's motion to alter or amend the earlier judge's rulings, but permitted her to file an amended complaint alleging that Whitaker was the "final policymaker" with respect to the decision not to rehire the plaintiff. Thus, the case went to trial with Whitaker as the only defendant, though targeted for different relief in his personal and official capacities. The district court directed a verdict in favor of the defendant at the close of the plaintiff's case. The order that followed granting the directed verdict found that Whitaker individually was entitled to dismissal on qualified immunity grounds because the plaintiff had failed to demonstrate the existence of a clearly established constitutional right that had been infringed by Whitaker's action.
 
 
 13
 The appeal is from the order granting the directed verdict and dismissing all claims of the plaintiff.
 
 II.
 
 14
 On appeal the plaintiff argues that the district court erred in finding that the constitutional right of association does not apply to her claim. She also contends that this right of association was clearly established in 1988, thus defeating Whitaker's claim of qualified immunity. Finally, the plaintiff argues that the Board was a proper party and that the district court erred in granting its motion to dismiss.
 
 
 15
 The plaintiff submits that the district court failed to view the evidence most favorably to her in ruling on the motion for a directed verdict. Thus viewed, it is clear, the plaintiff asserts, that she presented evidence from which a jury could have found the constitutional violation she claims. The Supreme Court had recognized the right of privacy and association prior to 1988 and Whitaker should have known, according to the plaintiff, that he could not punish her because she was married to Diral Adkins, with whom the superintendent had a disagreement.
 
 
 16
 As to the Board, the plaintiff argues that a school board is not an arm of the state but is more like a municipal corporation or political subdivision. As such, it does not enjoy Eleventh Amendment immunity, but can be sued in federal court under the Monell doctrine. (Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).
 
 
 17
 The defendants respond that they did not interfere with the plaintiff's marriage relationship. They did not require her to divorce her husband in order to keep her job or otherwise intrude into the relationship of husband and wife. They argue in the alternative that even if their actions interfered with a constitutionally protected right, the plaintiff's rights must be weighed against the interest in efficient operation of the school system. In such a balancing, they contend, the employer's interests would clearly outweigh those of the plaintiff.
 
 
 18
 As to the order dismissing the Board, the defendants maintain it was correct for two reasons. They state that in Kentucky local school boards are considered arms of the state that are entitled to immunity from suit. Moreover, they argue, even if the Board is not entitled to Eleventh Amendment immunity, the plaintiff failed to present any evidence that Whitaker acted in accordance with Board policy or custom and usage in refusing to recommend Mrs. Adkins for continued employment. A local governmental entity may not be held under a respondent superior theory. Monell requires proof that an employee or agent of such an entity acted pursuant to policy, custom or usage in order for the governmental unit to be held liable.
 
 III.
 
 19
 We consider first the question of whether the plaintiff's proof was sufficient to make a jury issue on her claim of infringement of the constitutional right of privacy and association. In doing so, in view of the fact that the district court granted a directed verdict on this issue, we apply a de novo standard of review.
 
 
 20
 The evidence was clearly sufficient to support a jury determination that Whitaker refused to recommend the plaintiff for continued employment because of her marriage to Diral Adkins. If this reason for his refusal contravened Mrs. Adkins' constitutional rights, the district court erred in directing a verdict for the defendant. While the plaintiff had no contractual right to a job, she could not be deprived of her public employment for exercising a constitutional right. Our statement in Littlejohn v. Rose, 768 F.2d 765, 769-70 (6th Cir.1985), cert. denied, 475 U.S. 1045, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986), applies with equal force here: "It is clear from the Supreme Court's analysis in Perry [v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) ] that a person's involvement in activity shielded by the constitutionally protected rights of privacy and liberty constitutes an impermissible reason for denying employment."
 
 A.
 
 21
 Although Mrs. Adkins had no property right to continued employment she had a liberty interest in not being denied employment for exercising her First Amendment right to freedom of association. That such a right exists cannot be denied, at least since the Supreme Court's decision in Roberts v. United States Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). The Court in Roberts described this constitutional right as follows:
 
 
 22
 Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.
 
 
 23
 The intrinsic and instrumental features of constitutionally protected association may, of course, coincide. In particular, when the State interferes with individuals' selection of those with whom they wish to join in a common endeavor, freedom of association in both of its forms may be implicated.
 
 
 24
 Id. at 617-18, 104 S.Ct. at 3249.
 
 
 25
 Given Mrs. Adkins' testimony that she agreed with her husband's view that Whitaker was acting wrongfully in requesting negative evaluations, and that she associated with others who felt that way, this may be a case where both forms of freedom of association are implicated. It is not necessary to decide whether both forms are implicated, however; we have no doubt that the first form--that related to "certain intimate human relationships"--is implicated.
 
 
 26
 Contrary to the defendants' argument, which the district court adopted, it is not necessary that the governmental act require the abandonment or dissolution of a marriage relationship as the price for retaining public employment. The right of association is violated if the action constitutes an "undue intrusion" by the state into the marriage relationship. Id. at 618-19, 104 S.Ct. at 3249-50.
 
 B.
 
 27
 The Supreme Court has not backed away from its holding in Roberts. Rather, the existence of a constitutional right to freedom of association was reaffirmed in Board of Directors of Rotary International v. Rotary Club of Duarte, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987), where the two forms of the right to freedom of association were again described. Once the Supreme Court has proclaimed the existence of a constitutional right, that right is "clearly established" for purpose of deciding a claim of qualified immunity.
 
 
 28
 The Supreme Court identified the constitutional right to freedom of association in "intimate human relationships" as early as 1984, and applied the same reasoning again in 1987. As a public official charged by state law with making discretionary decisions for recommending hiring and other personnel actions to the board of education, it was objectively reasonable to require that Whitaker be aware of and observe the constitutional right. Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987). The district court should have adhered to the first judge's ruling denying Whitaker dismissal on qualified immunity grounds.
 
 C.
 
 29
 The plaintiff made out a prima facie case of a constitutional violation. Thus, the district court erred in granting the motion for a directed verdict. In determining whether to affirm dismissal of a § 1983 action the question is "whether plaintiff has presented sufficient probative evidence that would be strong enough to allow a jury to return a verdict for her." Hull v. Cuyahoga Valley Bd. of Educ., 926 F.2d 505, 512 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991). Accordingly, we reverse the judgment dismissing all claims against Superintendent Whitaker and remand to the district court for a new trial. Of course, we express no views on the outcome of the claims against Whitaker. That depends upon proof at the second trial. If the plaintiff's proof is the same, the defendant Whitaker will then have an opportunity to present evidence that the plaintiff's marriage relationship to Diral Adkins was not a "substantial" or a "motivating factor" in the decision not to continue Mrs. Adkins' employment. Even if the defendant does not convince the jury on this question, he can escape liability if he can show by a preponderance of the evidence that Mrs. Adkins would not have been continued "even in the absence of the protected conduct." Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).
 
 
 30
 Special interrogatories to the jury will produce answers to these discrete questions.
 
 IV.
 
 31
 The remaining question is whether the district court correctly dismissed the Board as a defendant. Both parties cast their principal arguments on this question in terms of Whitaker's role and authority in the final decision not to continue Mrs. Adkins' employment. They present the Eleventh Amendment issue as a secondary argument. Because we find that the Board is immune from suit under Supreme Court interpretations of § 1983, we need not address the Eleventh Amendment. See Williams by Williams v. Ellington, 936 F.2d 881, 884 (6th Cir.1991).
 
 A.
 
 32
 This action seeks relief under 42 U.S.C. § 1983, which provides:
 
 
 33
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
 
 
 34
 Since Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), it has been established that local governing bodies are "persons" within the meaning of this statute. While such a body is not liable under respondent superior for an employee or officer's acts, it may be sued for having caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690, 98 S.Ct. at 2036. Since such bodies can act only through natural persons, the critical question is whether the person committing the act did so pursuant to official policy. A formally adopted policy is not required; established usage or custom may be sufficient. Id. at 690-91, 98 S.Ct. at 2036.
 
 
 35
 In Pembaur v. Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court dealt with the situation in which a single act of a local official may be sufficient to establish an unconstitutional policy of the governing body. The Court plurality held that only local officials who have "final policymaking authority" may subject the local governing body to § 1983 liability, and whether an official has such final authority is a question of state law. Id. at 483, 106 S.Ct. at 1300. Noting a divergence among the courts of appeals in their interpretation of Pembaur, the Court undertook to "clarify the issue" in City of St. Louis v. Praprotnik, 485 U.S. 112, 124, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).
 
 
 36
 In Praprotnik, Justice O'Connor, writing for a plurality, emphasized the importance of determining, if possible, where state law places final policymaking authority. ("[W]e can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business."). Id. at 125, 108 S.Ct. at 925. The opinion also stressed the necessity of identifying the official or officials responsible under state law for making policy in the particular area of the body's business involved in the act alleged to be unconstitutional. Id. at 123, 108 S.Ct. at 924.
 
 B.
 
 37
 The area of the Board's business involved in this case is hiring and assignment of personnel.
 
 
 38
 Under Kentucky law in effect at the time[1] of Whitaker's refusal to recommend Mrs. Adkins for continued employment, school boards made all personnel appointments, promotions and transfers. A statute, Kentucky Revised Statutes (KRS) 160.380(2), provided that "[a]ll appointments, promotions and transfers ... shall be made only upon the recommendation of the superintendent of schools, subject to the approval of the board." This statute was found by Kentucky's highest court to be "clear and certain" in Reed v. Greene, 243 S.W.2d 892, 893 (Ky.1951). The court found the statute to mean that "[t]he superintendent has the sole authority to recommend the appointments; the authority vested in the board, is to approve, or disapprove the recommendations." Id. Interpreting an earlier statute to the same effect, the court held in Floyd County Bd. of Educ. v. Hall, 242 Ky. 680, 47 S.W.2d 514 (1932), that a county board of education has authority to reject a superintendent's recommendation. In Burkhart v. Bd. of Educ. of Harlan County, 649 S.W.2d 855, 857-58 (Ky.App.1983), the intermediate court of appeals held that when a board of education fails to approve a superintendent's recommendation, the recommended action has not occurred. There can be no de facto personnel actions on the basis of a superintendent's recommendation alone. Consistent with the language of the statute and authoritative decisions, the Attorney General of Kentucky has issued an opinion that a superintendent may not employ an individual whom he has recommended without approval of the board. OAG 73-523.
 
 C.
 
 39
 It is conceded that the Magoffin County Board of Education had no anti-nepotism rule or regulation in 1988. Thus, Whitaker's decision not to recommend Mrs. Adkins for continued employment was not made pursuant to a board policy against one spouse reporting to or working under the supervision of the other spouse. Whitaker acted, insofar as the record discloses, for a reason related solely to his own goals and unrelated to any Board policy. Likewise, there was no showing that Whitaker advised the Board of his reason for not recommending the continuation of the plaintiff's employment.
 
 
 40
 The fact that the Board did not question Whitaker's decision to not recommend employment for Mrs. Adkins is immaterial. The plurality opinion in Praprotnik addressed this question:
 
 
 41
 Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy. It is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them. It would be a different matter if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker. It would also be a different matter if a series of decisions by a subordinate official manifested a "custom or usage" of which the supervisor must have been aware.... In both those cases, the supervisor could realistically be deemed to have adopted a policy that happened to have been formulated or initiated by a lower ranking official. But the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where (as here) the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale. In such circumstances, the purposes of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy.
 
 
 42
 Praprotnik, 485 U.S. at 130, 108 S.Ct. at 927-28.
 
 
 43
 This is a close question. It could be argued that Whitaker was the final policymaker with respect to his decision not to rehire Mrs. Adkins rather than making a recommendation for the Board to hire her. We believe this would be a strained formulation. The fact that a person who has authority only to recommend, and whose recommendations can be implemented only upon subsequent approval by a governing body, decides to make no recommendation does not convert the recommender into a final policymaker.
 
 
 44
 Although the Board could not hire classified personnel without a recommendation from the Superintendent, controlling Kentucky law in 1988 placed final authority for personnel decisions squarely with the Board. The record discloses a personnel decision by the superintendent for reasons that do not reflect Board policy or custom. The plaintiff produced no evidence in response to the motion to dismiss the Board from which it could be held that Whitaker acted as a "final policymaker" in removing the plaintiff from her position as secretary to the high school principal and refusing to recommend her for any other position. Cf. Johnson v. Hardin County, Ky., 908 F.2d 1280, 1287 (6th Cir.1990). Therefore, his actions were not those of the Board.
 
 CONCLUSION
 
 45
 The judgment dismissing the Magoffin County Board of Education is affirmed. The order granting a directed verdict to Whitaker in his individual and official capacities is reversed. Whitaker conceded in his response to the plaintiff's objections to the magistrate judge's report and recommendations that he was properly sued in his official capacity to the extent the plaintiff seeks injunctive relief. The case is remanded for a new trial on all the plaintiff's claims against Whitaker in his individual capacity and the claim against him for injunctive relief in his official capacity.
 
 
 46
 No costs are allowed on appeal.
 
 
 
 [1]
 Under the School Reform Act of 1990 the Kentucky General Assembly drastically changed many of the duties and relationships of school districts and their employees