**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0201n.06
Filed: April 16, 2008

**07-5681**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KAREN CAMERON, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GRAINGER COUNTY, TENNESSEE and | ) | EASTERN DISTRICT OF TENNESSEE |
| RHONDA REAGAN, individually and in | ) | |
| her official capacity as Circuit Court Clerk | ) | |
| of Grainger County, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: KEITH, DAUGHTREY, and GIBBONS, Circuit Judges.

PER CURIAM. Plaintiff Karen Cameron filed this civil rights action pursuant to 42 U.S.C. § 1983, claiming that she was terminated from her position as deputy court clerk because she married into a family that was politically opposed to the re-election of the Circuit Court Clerk, defendant Rhonda Reagan. The district court found that the termination constituted retaliation against the plaintiff's exercise of her First Amendment rights to political and intimate association and denied the defendant's motion for summary judgment based on qualified immunity. The defendant now appeals the denial of her motion for summary judgment. Because we conclude that a reasonable jury could find that Cameron's marriage was a substantial motivating factor in Reagan's decision to fire

Cameron, and because that action would constitute a constitutional violation of the clearly established right to intimate association under the First Amendment, we affirm the decision of the district court denying qualified immunity to the defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Cameron began working at the Grainger County Circuit Court Clerk's office as a deputy clerk under the supervision of the clerk of court, defendant Reagan. On July 15, 2004, Cameron's then boyfriend (later her husband), Michael Cameron, assaulted Cameron after falsely accusing her of dating someone else and, during the assault, threatened Cameron and other court personnel with harm if a warrant were taken out against him. Despite the threat, Cameron gave a statement to police the next day and on July 17, 2004, a warrant was issued and served on Michael Cameron for aggravated assault. Reagan was with Cameron when she gave the statement and, therefore, became aware of the threat against court personnel.

According to Cameron, although the assault and the threat were common knowledge in the office, it did not cause any undue disruption and she was not treated adversely by her co-workers or by Reagan. The only change in the office routine was that a deputy sheriff patrolled the area of the courthouse where the clerk's office was located on foot for a few weeks after the incident, but no further threats were made and the patrol ceased.

Because the criminal complaint was filed in Grainger County, the grand jury's review of the case and the related paperwork were handled in the clerk's office where Cameron worked. Although Reagan asked Cameron not to handle any of this paperwork, and Cameron fully complied, Cameron contends that at no time before her marriage to Michael Cameron on August 16, 2004, did Reagan mention anything about a conflict of interest necessitating Cameron's taking a leave of absence during the pendency of the case against Michael Cameron.

At some point after Reagan became aware of Cameron's marriage, Reagan asked Cameron to take a leave of absence. Cameron explained in her deposition that Reagan first told her the leave was necessary to avoid the "conflict of interest" that would arise if Cameron continued to work in the clerk's office while her husband's criminal case was being handled there. Later Reagan told Cameron that regardless of how the criminal case was resolved, she did not want Cameron to return to work until after the upcoming August 2006 election, some two years away.

According to the plaintiff, Michael Cameron and his father, Earl Cameron, were both active political opponents of Reagan, having supported her opponents in elections for clerk of court since the 1994 election. Earl Cameron was a former Grainger County Sheriff and, at the time of the events in this case, a county commissioner. Reagan admitted in her deposition that she was aware of the Camerons' opposition to her re-election, at least with regard to the most recent election in 2002. However, the plaintiff had not worked against

Reagan in any election prior to her termination. Cameron testified in her deposition that she initially agreed to a leave of absence, but when Reagan told her it would continue until after the 2006 election, she refused to take the leave, saying that she would lose her insurance coverage if it were for that long. As a result, Reagan officially terminated Cameron on January 13, 2005. One week later, on January 20, 2005, Michael Cameron was indicted by the Grainger County grand jury. He eventually pleaded guilty to a reduced charge of assault, served 30 days in jail, and was placed on probation for the remainder of his sentence of 11 months and 29 days.

In her deposition, Reagan testified that she considered Cameron to have a conflict of interest starting from the time of the assault and denied that Cameron's marriage had anything to do with the decision to discharge her. Reagan also described the conflict as ongoing, insisting that a leave of absence would have been necessary until the litigation in Michael Cameron's case was completed, including the appeal that was still pending at the time of Reagan's deposition in October 2006. Pushed for details about the alleged conflict of interest, Reagan testified only that "it would be a conflict for her to handle the paperwork, to send out jury notices, talk to the people, talk to the jurors" because she was a witness in the case against her husband. She was forced to admit, however, that during the six-month period between Michael Cameron's indictment and the plaintiff's last week of work, there was no apparent disruption of work in the clerk's office attributable to the alleged conflict of interest on the plaintiff's part.

In her motion for summary judgment, Reagan claimed that no constitutional violation occurred in connection with her discharge of Cameron, but that – if it did – the constitutional right involved was not clearly established at the time of the plaintiff's termination. She now appeals the district court's ruling that she was not entitled to qualified immunity on that basis.

## DISCUSSION

We review *de novo* a district court's decision on summary judgment denying qualified immunity, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. *See Sowards v. Loudon County*, 203 F.3d 426, 438 (6th Cir. 2000). Summary judgment is proper only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See id.* at 431; Fed. R. Civ. P. 56(c). Moreover, we apply a "two-step test for determining whether a government official is entitled to qualified immunity." *Sowards*, 203 F.3d at 438. The plaintiff must establish, first, that a state official violated a constitutionally-protected right and, second, that the right was clearly established at the time of the violation such that the defendant official should reasonably have known that the conduct in question was unconstitutional. *See id.*

Although the plaintiff pleaded her claim as a violation of her First Amendment rights to both intimate association *and* political association, because Cameron did not share

Michael Cameron's political opposition to Reagan prior to her termination, it is unclear whether the right to political association was properly invoked. The case law cited by the plaintiff and relied upon by district court either focuses exclusively on the right of intimate association or deals with an intertwining of the two rights, *i.e.,* when the plaintiff shares or supports the political views of her spouse, and thus does not address this issue directly. However, because Cameron's right to intimate association is clearly implicated here, we need not decide whether her right to political association is also at issue. *See Adkins v. Bd. of Educ. of Magoffin County*, 982 F.2d 952, 956 (6th Cir. 1993) (Given that plaintiff testified that she agreed with the political view of her husband that was the source of her supervisor's ire, "this may be the case where both [political and intimate] freedom of association are implicated. It is not necessary to decide whether both forms are implicated, however; we have no doubt that [intimate association] is implicated.").

In our *en banc* decision in *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), we crystalized the basis for First Amendment retaliation claims into a three-part analysis. To establish an affirmative case, the plaintiff must show (1) that she engaged in protected conduct; (2) that there was an adverse action taken against her "that would deter a person of ordinary firmness from continuing to engage in the conduct"; and (3) that "there is a causal connection between elements one and two- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* In the last step, "the subjective motivation of the defendants is at issue." *Id.* at 399. Once the plaintiff finishes her affirmative case by showing "that [her] protected conduct was a motivating factor behind

any harm," under the burden-shifting framework established by the Supreme Court in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), the defendant is still entitled to prevail on summary judgment "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity." *Thaddeus-X*, 175 F.3d at 399.

We have since applied the *Thaddeus-X* rubric to a First Amendment retaliation case similar to the case at hand. In *Sowards v. Loudon County*, 203 F.3d 426, 429 (6th Cir. 2000), the plaintiff, a jailer working under the county sheriff, claimed that although she was ostensibly fired for a mistake in one of her job duties, specifically failing to find an outstanding warrant resulting in a individual being let out of custody without being served, the sheriff's real motivation for terminating her was her support of her husband as the opposing candidate against the incumbent sheriff in a recent election. We reversed the district court's grant of summary judgment to the defendant sheriff on the plaintiff's § 1983 claim for violation of her rights of political and intimate association, pointing out that the *Thaddeus-X* analysis "focuses on whether the adverse employment action was motivated in substantial part by the plaintiff's constitutionally protected activity." *Sowards*, 203 F.3d at 431, 435. We held that the plaintiff had sufficiently shown that "she was engaged in the protected conduct of intimate association under the First Amendment," that her termination "qualifi[ed] as an adverse employment action for purposes of a retaliation claim," and that she had presented "sufficient evidence upon which a reasonable juror could conclude that [the] decision to terminate her employment was substantially motivated by her protected

First Amendment associational rights." *Id.* at 433-34. To show substantial motivation, the plaintiff had provided direct evidence – the sheriff's equivocation at deposition that he "might have treated her termination case differently if she had been one of his political supporters." *Id.* at 434. She had also provided circumstantial evidence – a negative change in her work environment after her husband announced his candidacy, coupled with the facts that aside from the warrant mistake, she otherwise had an unblemished performance record and that other employees had made similar (although less serious) mistakes and not been disciplined. *See id.* at 434. We also found that the sheriff had not presented sufficient evidence to establish that he would have fired her on the basis of the single mistake involving the unserved warrant absent her association with her husband, given that she otherwise had a good performance record and given the sheriff's admission that he had some understanding that the plaintiff would support her husband rather than him in the upcoming election. *See id.* at 435.

It is clear that the district court in this case correctly denied summary judgment on the qualified immunity claim. Reagan concedes that Cameron was "engaged in constitutionally protected conduct in marrying Michael Cameron and that her termination constitutes an adverse employment action," satisfying the first two steps in the retaliation analysis. *See Thaddeus-X*, 175 F.3d at 394. The defendant contends, however, that Cameron cannot prove a causal connection, arguing that "she cannot establish that her termination was motivated in substantial part by her marriage to Michael Cameron." *See id.* at 394. Reagan asserts that "Plaintiff admitted in her deposition that her refusal to take

a leave of absence (after originally agreeing to do so) and resulting termination had nothing to do with her marriage to Michael Cameron. The deposition passage cited, however, does not support this proposition when it is viewed in the light most favorable to the plaintiff.

In the relevant portion of the deposition, Cameron explained that she initially agreed to take a leave of absence based on the supposed conflict of interest caused by her marriage, but when Reagan informed her that the leave would be until after the election, she changed her mind because she realized she could not afford to be out of work for such a long period of time. Cameron points out that any "conflict" resulted as soon as she filed the complaint against Michael Cameron and the paperwork began filtering into the office, a contention that Reagan herself admitted in her deposition, and that it was sufficiently taken care of because she did not work directly on the case. Then, it was only after her marriage to Reagan's political opponent that Reagan became concerned about the conflict to such that an extent that a prolonged leave of absence was deemed necessary. More importantly, because the 2006 election had no logical relation to the conflict or the necessity of any leave of absence, Reagan's reference to the election tends to establish that the real reason for Cameron's termination was her marriage into a politically adverse family. Because a reasonable jury could so conclude, we hold that the plaintiff has met her burden.

Turning to the burden-shifting part of the retaliation analysis, we further conclude that the defendant has not proved that, viewing the evidence in the light most favorable to the plaintiff, she would have terminated Cameron even in the absence of the protected activity,

*i.e.*, her marriage into the Cameron family. *See Thaddeus-X*, 175 F.3d at 399; *Sowards*, 203 F.3d at 435. Reagan has offered some policy rationale for her action, *i.e.*, that there was a conflict of interest that necessitated an extended leave of absence (that, when refused, required termination). It is, however, not a convincing one, given that there appear to be less drastic ways of taking care of any conflict and, moreover, that the 2006 election apparently had nothing to do with any perceived conflict of interest and yet was brought into the equation by Reagan. Certainly the defendant has not pointed to any evidence, such as a written or generally known policy regarding conflicts of interest that necessitate extended leaves, that would show that she was required to take the same action without regard to the election.

The defendant also argues that "even assuming that Plaintiff's constitutional rights were violated, Plaintiff cannot show that such rights were clearly established." The defendant is correct that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 896 (6th Cir. 2006) (internal quotations and citation omitted), and that the court "do[es] not assess the right violated at a high level of generality, but, instead, . . . must determine whether the right was 'clearly established' in a more particularlized, and hence more relevant, sense. . . ." *Myers v. Potter*, 422 F.3d 347, 356 (6th Cir. 2005). However, the opinion in *Sowards* and our earlier decision in *Adkins* meet these standards. Both cases have facts substantially similar to the case at hand and therefore established well before

Reagan's activity in this case that retaliation for the exercise of a plaintiff's First Amendment right to intimate association is a constitutional violation. Any factual distinctions between those cases and this one are simply not substantial enough to be germane to the issue of whether the right was clearly established at the time that the events in this case took place.

In support of the contention that no "clearly established" right was violated, the defendant stresses that Cameron was an employee at will and that she was "terminated after her refusal to take a leave of absence to prevent the appearance of corruption." However, in *Adkins*, the plaintiff, too, was an at-will employee, and the court explained that although the plaintiff "had no property right to continued employment[,] she had a liberty interest in not being denied employment for exercising her First Amendment right to freedom of association." *Adkins*, 982 F.2d at 955; *see also Thaddeus-X*, 175 F.3d at 394 ("[R]etaliation for the exercise of constitutional rights is itself a violation of the Constitution."); *Crawford-El v. Britton*, 523 U.S. 574, 589, n.10 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right."). Likewise, here it is the plaintiff's right not to suffer retaliation for the exercise of her First Amendment right to association that is at issue. The defendant's contention that she had no retaliatory motive because she terminated Cameron not on the basis of her marriage, but rather to prevent the appearance of corruption, requires us to view the facts in the light most favorable to the defendant rather than, as we must, in the plaintiff's favor.

Finally, the defendant argues that she is entitled to qualified immunity because "Plaintiff has offered no evidence to show that Ms. Reagan's termination of Plaintiff was 'objectively unreasonable,'" citing *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 n.2 (6th Cir. 2005). This argument is premised on the defendant's contention that a "conflict of interest" motivated the termination, but as the district court held and as the record establishes, when viewed in the light most favorable to the plaintiff, the facts show that it was Cameron's marriage into a politically adverse family, not a conflict of interest, that was behind Reagan's action. Moreover, *Adkins* and *Sowards* support the conclusion that such a termination would be "objectively unreasonable." *Cf. Crawford-El*, 523 U.S. at 593-94 (rejecting Justice Scalia's "unprecedented proposal" in his dissent "to immunize all officials whose conduct is 'objectively valid' regardless of improper intent").

Relying on *Sowards* and *Adkins* in ruling that the defendant was not entitled to qualified immunity in this case, the district court held that "considering the evidence in the light most favorable to the plaintiff, a reasonable jury could conclude that a substantial factor in Ms. Reagan's decision to terminate the plaintiff's employment was the plaintiff's marriage to Mr. Cameron, a member of a family which was comprised of her political opponents" and concluded that the allegation, if proved, would "state a constitutional First Amendment claim upon which relief could be granted." We agree. The defendant's argument that the plaintiff was terminated not because of her marriage to a political opponent but because she refused to take a leave of absence is unpersuasive, given the fact that the term of the required leave was to an indefinite date *beyond the next local election* some two years

away. That demand bore no objectively reasonable relation to the purported conflict of interest arising from the pending criminal case but was clearly connected to a constitutionally improper purpose. Moreover, the plaintiff had managed to remain in the clerk's office during the six months between the assault by Michael Cameron and his indictment without any apparent conflict – of interest or otherwise. Finally, because of the existence of the *Soward* opinion, as well as *Adkins*, the defendant cannot claim that the First Amendment right on which the plaintiff relies was not clearly established at the time she was discharged in January 2005.

For the reasons set out above, we AFFIRM the judgment of the district court and REMAND this case for further proceedings.