**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0092n.06

Case No. 19-3462

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Feb 07, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| WILLIAM SPITHALER, dba Gustavus Firewoods and Hardwoods, LLC; BETH SPITHALER, dba Yoder Smoking Woods, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| RANDY SMITH, in his individual capacity and in his official capacity as the Trumbull County Engineer; TRUMBULL COUNTY, OHIO, | ) ) ) ) ) | |
| Defendants-Appellees. | ) ) | |

BEFORE: SUHRHEINRICH, DONALD, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. William and Beth Spithaler believe that Randy Smith, the Trumbull County Engineer, denied their applications for hauling permits in retaliation for Mr. Spithaler's public-records requests. But, according to the district court, the Spithalers lacked enough evidence that the permit denials were motivated by Smith's disdain for their requests for information. So the court granted summary judgment to Smith and Trumbull County on the Spithalers' First Amendment retaliation claim. Seeing no error, we affirm.

The Spithalers, a married couple, operate separate businesses out of their home on Davis-Peck Road in Trumbull County, Ohio. Mr. Spithaler runs a logging business named Gustavus

Firewoods and Hardwoods, LLC. Ms. Spithaler runs a business named Yoder Smoking Woods that sells leftover wood from the logging business to restaurants and individuals for their use in cooking and smoking. The Spithalers transport their products on Trumbull County roads.

To manage the wear and tear from overweight vehicles, the State of Ohio has directed local authorities to issue permits for heavy hauling on roads within their jurisdictions. *See* Ohio Rev. Code § 4513.34(A)(1). In 2017, Randy Smith's staff revamped Trumbull County's permitting program. The new program contemplates different permit options based on whether an applicant plans to use a "load-posted" road: a road that can handle only limited weights and so has a certain weight limit "posted." Haulers whose operations are based on load-posted roads must apply for a "continuing-operator permit," which costs $500 every 90 days (about $2000 annually). Haulers whose operations are based on other roads need only obtain an "annual-supplier permit," which costs much less ($50 annually). The county engineer's office evaluates both types of applications, but the county commissioners must provide the final approval for permits.

On March 9, 2018, William Spithaler visited the county engineer's office to learn more about this permitting program. A member of Smith's staff invited Spithaler to look over the office's permitting-program records, and Spithaler left with some 400 copied pages. A few days later, he requested the cheaper annual-supplier permit for his logging business. At that time Davis-Peck Road was not load-posted. But the engineer's office had recently received a complaint of "large and deep potholes" on the road, and a staff member who had observed its poor condition recommended that it be load-posted. So the office decided to load-test the road before processing Spithaler's application. Smith describes that type of testing as part of the "discretionary due diligence in reviewing special hauling permit applications." Shortly after the decision to test the road, Ms. Spithaler also applied for an annual-supplier permit for her business.

The county engineer's office hired a private engineering firm to evaluate Davis-Peck Road. The parties agree that this private firm undertook objective testing consistent with accepted engineering standards. It concluded that Davis-Peck Road had a limited load-bearing capacity and that it should be load-posted with a 10-ton weight limit. That finding forced the Spithalers to consider the pricier continuing-operator permit.

Rather than apply for that permit, the Spithalers sued Smith and Trumbull County under 42 U.S.C. § 1983. They alleged, among other claims, that Smith and Trumbull County violated the First Amendment by initiating the testing on Davis-Peck Road and denying the cheaper permits in retaliation for Mr. Spithaler's public-records requests. The district court granted summary judgment to Smith and Trumbull County on all claims. *Spithaler v. Smith*, No. 4:18-cv-1361, 2019 WL 2076095, at *6 (N.D. Ohio May 9, 2019). It recognized that the Spithalers' retaliation claim required them to show that Smith and Trumbull County took adverse actions against them at least in part because of their allegedly protected activity (the public-records requests). *Id.* at *5. Yet the Spithalers failed to present any evidence that the testing or permit denials sprang from such a retaliatory motive. *Id.* Rather, the testing arose from Mr. Spithaler's permit application, and the permit denials arose from the objective need for a 10-ton weight limit on Davis-Peck Road. *Id.* The Spithalers appeal.

We have said many times that plaintiffs asserting First Amendment retaliation claims must prove three elements to state a prima facie case. Element One: The plaintiffs must show that they have engaged in activity protected by the First Amendment. Element Two: The plaintiffs must show that a defendant took a sufficiently serious action against the plaintiffs, one that would deter an ordinary person from continuing in the constitutionally protected activity. Element Three: The plaintiffs must show a causal connection between these two elements, meaning that the defendant

was motivated to take the adverse action in part because of the plaintiffs' protected activity. *See Meadows v. Enyeart*, 627 F. App'x 496, 502 (6th Cir. 2015); *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Here, the Spithalers argue that the First Amendment protected Mr. Spithaler's requests for public records. They argue that Smith's decisions to load-test Davis-Peck Road and to deny the annual-supplier permits qualify as adverse actions. And they argue that Smith was motivated by Mr. Spithaler's records requests when deciding to load-test the road and deny the permits.

Before assessing the Spithalers' claim, we must begin with some procedural niceties about the § 1983 cause of action. The Spithalers sued Smith both in his personal capacity and in his official capacity, and they separately sued Trumbull County. The different defendants come with different defenses. In his personal capacity, Smith may seek the cover of qualified immunity. *See Lane v. Franks*, 573 U.S. 228, 243–46 (2014). To hold Smith personally liable, the Spithalers would have to show that his alleged actions violated their "clearly established" First Amendment rights. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Yet we have said that "neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Phillips v. DeWine*, 841 F.3d 405, 418 (6th Cir. 2016) (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978)). So this defense would require us to consider a question addressed by few cases: Is it clearly established that the First Amendment protects a citizen's public-records *requests*, even if it does not compel *disclosure* of the underlying public records? *Cf. DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288–89 (11th Cir. 2019).

In his official capacity, by contrast, Smith lacks this qualified-immunity cover. *See Lane*, 573 U.S. at 246. That is because a suit against Smith in his official capacity "is, in all respects

other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). So the Spithalers' official-capacity claim against Smith is no different than their claim against Trumbull County. *Id.* at 167 n.14. This claim triggers a different defense. *Monell v. Department of Social Services*, 436 U.S. 658 (1978), holds that § 1983 does not make municipalities automatically accountable for an employee's unconstitutional action. *Id.* at 690–91. Rather, the employee's action must result from some municipal "policy or custom." *Bible Believers v. Wayne County*, 805 F.3d 228, 260 (6th Cir. 2018) (en banc). An employee's "single unconstitutional act" may meet that test, but only if it is "taken by an authorized decisionmaker" of the municipality. *Id.* This defense, then, would require us to consider a different question: Does Smith qualify as an "authorized decisionmaker" to trigger liability for Trumbull County under *Monell* even though the county commissioners have the final say on permitting decisions? *Cf. Adkins v. Bd. of Educ. of Magoffin Cty.*, 982 F.2d 952, 959 (6th Cir. 1993).

Rather than confront these defenses, we think it easiest to resolve this case on the merits of the Spithalers' First Amendment retaliation claim—specifically, the claim's causation element. To create a genuine issue of material fact on causation, a plaintiff "must point to specific, nonconclusory allegations reasonably linking" the plaintiff's protected activity to the adverse action. *Stevens v. Thetford Township*, 475 F. App'x 556, 560 (6th Cir. 2012) (quoting *Vereecke v. Huron Valley Sch. Dist.,* 609 F.3d 392, 400 (6th Cir.2010) (quotation marks omitted). To establish a prima facie case, the plaintiff must present enough evidence to show that the protected activity was "a *substantial or motivating* factor" in the adverse action. *Vereecke*, 609 F.3d at 400. We have said that a "'motivating factor' is essentially but-for cause—'without which the action being challenged simply would not have been taken.'" *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (quoting *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)). That language sounds like

the plaintiff bears the burden of showing but-for causation as part of the prima facie case. But we have also said that, once the plaintiff shows that the protected activity was a motivating factor, the burden shifts to the defendant to prove that the defendant would have taken the same action anyway, even absent the protected activity. *Sensabaugh v. Halliburton*, 937 F.3d 621, 628 (6th Cir. 2019). That language sounds like the defendant bears the burden of showing the absence of but-for causation. Who then bears the burden of proving but-for causation? We need not resolve this issue now. (For the Supreme Court's statements on the issue, *see Nieves v. Bartlett*, 139 S. Ct. 1715, 1722–23 (2019); *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1952 (2018); *Hartman v. Moore*, 547 U.S. 250, 260 (2006); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84 (1977).)

No matter who must prove but-for causation, the Spithalers have not even presented enough evidence to show that Mr. Spithaler's public-records requests in any way motivated Smith's decisions to load-test Davis-Peck Road or to deny their permits. And that failure of proof against Smith likewise dooms the Spithalers' claim against Trumbull County because they rely only on Smith's actions to hold the county liable.

To begin with, the Spithalers do not provide any evidence suggesting that Smith was even *involved* in the decisionmaking process for their applications. As the district court noted, they presented "scant evidence" and "conducted no depositions." *Spithaler*, 2019 WL 2076095, at *2. They thus chose not to question Smith about his role. They also conceded that they do "not know what, if any, personal involvement [Smith] had in connection with [their] applications for special hauling permits." They corresponded with others in the county engineer's office when discussing their applications. For his part, Smith added that other staff members were the "point people" for the permitting program.

In addition, the Spithalers identify no evidence suggesting that anyone in the office sought to retaliate against Mr. Spithaler for his records requests. A staff member instead recommended load-posting Davis-Peck Road based on his knowledge of the road's poor condition. There was nothing unusual about that type of recommendation. Smith says that his office typically gives "at least some consideration to whether the road should be load-posted" whenever a party applies for a hauling permit. He also identifies load-testing that occurred on a different road as a result of a different application. Not only that, the Spithalers conceded that the private engineering firm's testing comported with accepted engineering standards. So objective evidence vindicates the staff member's belief that Davis-Peck Road should, in fact, be load-posted.

Unlike in other cases, moreover, the Spithalers do not identify any similarly situated parties who were able to obtain an annual-supplier permit for a road that needed to be load-posted. *Cf. Arnett v. Myers*, 281 F.3d 552, 561–62 (6th Cir. 2002). For that matter, they do not identify any other permit applicants at all. So Smith's statement that the office routinely considers whether to load-post a road whenever it receives a permit application stands unrebutted.

The Spithalers make two arguments in response, neither of which creates a jury question on causation. They point to the "temporal proximity" between when they made their public-records requests (March 9) and when the office decided to load-test Davis-Peck Road (by March 22). But "[s]ubstantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke*, 609 F.3d at 400; *Sensabaugh*, 937 F.3d at 630. And the close timing between the records requests and the load-testing decision is explained by an intervening event: Spithaler applied for a permit.

Unable to rely on temporal proximity alone, the Spithalers cite a letter that an attorney in the county engineer's office wrote to the executive director of the Ohio Forestry Association. In

7

the letter, the Spithalers claim, the attorney states that Smith was displeased with Mr. Spithaler's public-records requests. We agree with the district court that the Spithalers take this letter "out of context." *Spithaler*, 2019 WL 2076095, at *5. The attorney did not indicate that the records requests were troubling; he indicated that Mr. Spithaler's "harassment" of Smith was troubling. *Id.* The letter, for example, cited an incident from 2017 in which Smith called the police on Spithaler because of a "verbal confrontation."

All told, the temporal proximity and this letter, "taken together," do not permit a reasonable jury to conclude that Mr. Spithaler's records requests in any way motivated the decisions to load-test Davis-Peck Road or to deny the Spithalers' permit applications. *Vereecke*, 609 F.3d at 403.

\* \* \*

Apart from their First Amendment claim, the Spithalers challenge the district court's order imposing $1,791.36 in sanctions for their failure to appear at their scheduled deposition times. But the order imposing these sanctions came after the Spithalers had filed their notice of appeal from the final judgment. We lack appellate jurisdiction to review that post-judgment order because the Spithalers did not file a separate notice of appeal from it. *See EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1249–50 (10th Cir. 1999); *Culinary & Serv. Emps. Union, Local 555 v. Hawaii Emp. Benefit Admin.*, 688 F.2d 1228, 1232 (9th Cir. 1982); *Shaw v. Merritt-Chapman & Scott Corp.*, 554 F.2d 786, 789 (6th Cir. 1977); *cf. Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 994 (6th Cir. 2012); 15B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3915.6, at 342–43 (2d ed. 1992).

We affirm.