NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0430n.06
Filed: June 20, 2007

NO. 06-5711

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JAMES CATE,

   Plaintiff-Appellee,

v.

CITY OF ROCKWOOD, TN;
MICHAEL MILLER, Individually and
in his Official Capacity as Mayor of the
City of Rockwood; ROCKWOOD WATER,
WASTEWATER AND NATURAL GAS
SYSTEMS; JAMES NEAL, Individually and
in his Official Capacity as Chairman of the
Board; HAROLD ISHMAN, Individually and
in his Official Capacity as member of the Board;
CARL LEHMAN, Individually and in his
Official Capacity as Member of the Board;
GLEN LONG, Individually and in his
Official Capacity as Member of the Board;
JACK MCGUIRE, Individually and in his
Official Capacity as Member of the Board;
ROCKWOOD WATER, WASTEWATER
AND NATURAL GAS BOARD,

   Defendants-Appellants.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

_____/

BEFORE: SUHRHEINRICH, CLAY, and SUTTON, Circuit Judges.

  **PER CURIAM.** Rockwood, Tennessee Mayor Michael Miller ("Mayor Miller"), Chairman

of the Rockwood Water Wastewater and Natural Gas Board James Neal ("Neal"), and Board

-1-

members Harold Ishman ("Ishman"), Carl Lehman ("Lehman"), Glen Long ("Long"), and Jack McGuire ("McGuire") (collectively "Individual Defendants") seek interlocutory appeal from the district court's denial of their motion for summary judgment based on qualified immunity. The City of Rockwood, Tennessee ("City") and the Rockwood Water Wastewater and Natural Gas Board ("Board") (collectively "Municipal Defendants") seek interlocutory review of the district court's denial of their motion for summary judgment, and raise various defenses to § 1983 municipal liability. Because Cate has presented sufficient facts alleging the Board violated his constitutional rights by eliminating his position and terminating him following his exercise of his First Amendment rights, we affirm the district court's denial of summary judgment to the water board members on their claims of qualified immunity. Because the defendants' qualified immunity argument on appeal as to Mayor Miller amounts to nothing more than a disagreement with Cate's version of the facts, we dismiss the Mayor's qualified-immunity claim for lack of jurisdiction.

## I. BACKGROUND

Because this case comes to us following the denial of qualified immunity on summary judgment, we construe the facts in the light most favorable to the plaintiff. In February 1993, Plaintiff James Cate ("Cate") was hired by the Rockwood Water, Wastewater and Natural Gas System ("Utility"). Until his heart surgery in 1996, Cate's job duties entailed the installation of water taps and the laying and repair of water lines. In 1998, after filing and settling a grievance with the Board regarding threats received from a co-worker, Cate was reassigned to the job of performing dead-end flushing of the water system, a less physically demanding job.

In or about September 2001, a former superintendent of the water department informed Cate that a city-owned tractor designated to be sold at a surplus sale was unexpectedly not present at the

sale. Shortly thereafter, Cate inquired of the tractor's whereabouts during a luncheon with Mayor Miller. Cate began to suspect that Benton Smith, a co-worker, had taken the tractor. Cate asked his supervisor, Jimmy Boles, if he was aware of the tractor's location. Boles told Cate that the tractor was taken to a junkyard. Cate went to the junkyard after work one day, whereupon junkyard personnel informed him that Smith had taken the tractor to the junkyard but then decided to keep it.

Within a week, Bill Stinnett of the Rockwood Police Department contacted Cate regarding the missing tractor. Cate told Stinnett that Boles claimed Smith had scrapped the tractor at the junkyard, but instead Smith kept the tractor.

On October 29, 2001, the Board called a meeting to consider the actions of Boles and Smith, and decided to suspend both men for thirty days without pay. Don Brasel, an individual present at the board meeting, heard Boles say, "There wouldn't have been nothing to this if big mouth had kept his mouth shut." Brasel later discovered that "big mouth" was a reference to Cate. When Cate went to work the next day, people at the Utility ignored him and acted as if he did not exist.

Neal, the chairman of the Board, met with Utility supervisors Jerry Hagler, John Sigmore, and Boles to discuss how to cover for the absence of Smith and Boles. Hagler reassigned Cate to Smith's position on the sewer crew. Cate's previous job, dead-end flushing, was to become everyone's shared responsibility. Afterwards, Boles told Cate of his reassignment to Smith's position. Cate replied that the reassignment was retaliation. Boles answered, "I will get you for this."

Cate told Mayor Miller about his reassignment, and stated that he did not believe Boles could reassign him because Cate's job prior to the reassignment was the result of a settlement of a grievance filed with the Board. Mayor Miller replied that he did not know the status of the

reassignment but would pursue the matter. He later called Cate, and said that the Board had voted to do away with his previous job, and that Cate was to assume his reassigned position on the crew.

Cate did not believe he could perform the heavy physical labor required at the sewer plant, which included digging, lifting, and shoveling. He was also no longer exempt from night calls and weekend duty. He took a one-week vacation and visited his physician, who authorized a thirty-day medical leave. Cate returned to work on December 18, 2001, and worked for eight days performing various duties. His physician authorized an additional thirty days of medical leave on January 3, 2002. On February 11, 2002, Cate was authorized another thirty days of medical leave by his physician.

In January 2002, Rodney King was hired by the Board as the new Operations Manager. King tried to contact Cate, but all of his attempts were unsuccessful. Shortly after acquiring his position, King spoke with Calvin Trew, a member of the City Council, and told him that Cate was a troublemaker and that nobody would agree to work with Cate.

Several weeks later, King told Trew that he had found a technicality on which to fire Cate: Cate's thirty day medical leaving beginning February 11, 2002 expired on March 13, 2002; Cate had not returned to work; and he had not requested another leave of absence. King asked Board member Neal to write a letter to Cate stating that Cate's leave of absence had expired and his job was considered to be abandoned because he had not returned to work.

On March 20, 2002, Cate received the letter in the mail. Cate, however, believed that his medical leave had not yet expired. Cate took his termination letter to his physician, who then sent the Utility a letter which explained that Cate's medical leave had been extended for thirty "working" days rather than thirty "calendar" days. Cate filed a grievance, which was denied by the Board.

On October 31, 2002, Cate filed suit against the defendants under 42 U.S.C. § 1983, claiming wrongful discharge in retaliation for exercise of his First Amendment rights and violations of Tennessee state law. On June 7, 2005, the defendants moved for summary judgment with respect to all of Cate's claims. The district court granted the Individual Defendants summary judgment on the state law claims, but denied summary judgment to all defendants on the § 1983 claims and denied qualified immunity to the Individual Defendants. The Individual Defendants bring this interlocutory appeal of the district court's denial of qualified immunity, and the Municipal Defendants seek interlocutory review of their denial of summary judgment based on various § 1983 municipal liability defenses.

## II. ANALYSIS

### A. Qualified Immunity

Government officials performing discretionary functions are entitled to qualified immunity from suit for civil damages unless their actions have violated a clearly established statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to show that a § 1983 defendant is not entitled to immunity from suit, a plaintiff must prove that (1) the facts as alleged by the plaintiff show a violation of a constitutional right; and (2) such right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). In broad terms, it is clearly established that a public employer "may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). However, the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" *Saucier*, 533 U.S. at 201. Thus, in a more particularized

and relevant sense, it must be determined whether "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 202.

It is well settled that a district court's order denying qualified immunity is immediately appealable, but only to the extent that the denial of qualified immunity turns on an issue of law. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We may not exercise appellate jurisdiction over the issue of "whether or not the pretrial record sets forth a 'genuine' issue of fact for trial," *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995), but only "the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998). When the "only 'facts' in dispute" are whether the defendants violated the plaintiff's constitutional rights, these are "mixed issues of law and fact, which we treat as issues of law, not issues of fact." *Williams v. Mehra*, 186 F.3d 685, 690 (6th cir. 1999) (en banc). We have jurisdiction over these types of disputes. *Id*.

The Individual Defendants claim that they are entitled to qualified immunity because: (1) Mayor Miller was not a member of the Board; and (2) the Board members were not involved in the decisions to transfer and terminate Cate.

With regard to Mayor Miller, the Individual Defendants specifically argue that he "had limited involvement [in Cate's reassignment or discharge], and that such involvement could not have subjected [Mayor Miller] to any liability." This argument, however, rests on disputed issues of fact–impermissible grounds for an interlocutory appeal in the qualified immunity context. *See Gregory v. City of Louisville*, 44 F.3d 725, 744, 745, 751 (6th Cir. 2006). While Cate's complaint states that Mayor Miller "has authority over the hiring and firing of city employees and makes appointments to boards and commissions," the Individual Defendants argue on appeal that Mayor

Miller "had no authority to hire or fire Utility employees" and had "never been involved in any hiring or firing decisions." However, Cate presented evidence below that Mayor Miller was implicated in the firing decision because he communicated with the Board and ultimately told Cate that the Board had voted to "do away with [his] job." The Individual Defendants counter on appeal that Mayor Miller "misspoke" in that instance. Given the obvious factual dispute over Mayor Miller's involvement in Cate's firing, exercise of appellate jurisdiction is improper.

We do retain jurisdiction, however, over the qualified-immunity claims of the individual Water Board members because these defendants argue that the facts as Cate has alleged them do not give rise to a constitutional violation. *See Williams*, 186 F.3d at 690 ("Because the [defendants] do not dispute the basic facts for purposes of this appeal, our decision turns on a question of law: whether the alleged facts, admitted for this purpose, show a violation of clearly established law."); *see also Hoard v. Sizemore*, 198 F.3d 205, 212 ("Although the parties give a different spin on the evidence, the underlying facts . . . are not disputed.").

The Individual Defendants claim that Board members Ishman, Long, Layman, and McGuire are also entitled to qualified immunity because Cate had not provided the district court with any specific facts indicating that they had anything to do with Cate's reassignment and termination. The Individual Defendants also claim that Neal is entitled to qualified immunity because his only involvement "was to compose a letter to [Cate] informing him that the City considered his lack of reporting to work an abandonment of his position." However, Cate presented evidence before the district court that the Board voted to eliminate his position at the Utility: first, that Mayor Miller told Cate that the Board had eliminated his position; and second, that Cate was transferred to the sewer plant immediately after a Board meeting on October 28, 2001. Under these circumstances, Cate has

presented sufficient facts to show that the Board retaliated against him in reassigning and ultimately firing him from his job. The district court correctly denied summary judgment to the individual Board defendants.

### B. Municipal Liability

The Municipal Defendants seek interlocutory review of the district court's order denying their motion for summary judgment, arguing that Cate lacks a sufficient basis to impose municipal liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). However, it is not apparent we have appellate jurisdiction over these issues because "[a]n order denying summary judgment is not ordinarily a final, appealable decision." *Chesher v. Neyer*, 477 F.3d 784, 793 (6th Cir. 2007). The collateral order doctrine is an exception to the final judgment rule, *see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996), but an order denying summary judgment to a municipal § 1983 defendant is not an appealable collateral order. *See Swint v. Chambers County Com'n*, 514 U.S. 35, 43 (1995) ("An erroneous ruling on [municipal] liability may be reviewed effectively on appeal from final judgment. Therefore, the order denying the [municipality]'s summary judgment motion was not an appealable collateral order."). However, pursuant to the doctrine of "pendent appellate jurisdiction," this Circuit recognizes a limited exception to the non-appealability of interlocutory review of municipal liability issues when they are "inextricably intertwined" with qualified immunity issues over which the appellate court properly and independently has jurisdiction. *See McKenna v. City of Royal Oak*, 469 F.3d 559, 562-63 (6th Cir. 2006). More specifically, we have exercised "pendent appellate jurisdiction" over municipal liability issues only in the limited circumstance where "the finding of nonexistence of a constitutional claim for [qualified] immunity purposes necessarily decide[s] the whole case not only

in favor of the officer, but also in favor of the [municipality] as well," *Brennan v. Township of Northville*, 78 F.3d 1152, 1158 (6th Cir. 1996), "because there can be no municipal liability under section 1983 for [unconstitutional conduct] when no [constitutional violation] has actually occurred." *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 224 (6th Cir. 2004). We are not faced with a situation in which the constitutional claim has failed as a matter of law. Rather, Cate has supplied sufficient evidence that the Board defendants violated his constitutional rights. We therefore do not exercise pendent appellate jurisdiction over the municipal defendants' claims.

Nor can the Mayor's qualified immunity claim serve as the basis for pendent jurisdiction. Exercise of pendent jurisdiction requires proper jurisdiction over the qualified immunity issue. *See McKenna*, 469 F.3d at 563 ("[W]here the court does not have jurisdiction to consider the qualified immunity issues, the court necessarily has no jurisdiction to consider a pendent § 1983 question."). Thus, notwithstanding whether the municipal liability and qualified immunity issues in the instant case are "inextricably intertwined," pendent appellate jurisdiction over the Municipal Defendants' claims is not proper given that we lack jurisdiction over the Mayor's claim.

The Municipal Defendants' failure to raise their municipal liability defenses before the district court in their motion for summary judgment provides further reason for not addressing these issues. *See Taft Broadcasting Co. v. United States*, 929 F.2d 240, 244 (6th Cir. 1991) (stating that issues not presented to the district court are generally deemed forfeited on appeal).

### III. CONCLUSION

For the reasons set forth above, we **DISMISS** the appeals of the Mayor Miller and the Municipal Defendants for lack of appellate jurisdiction, and we affirm the district court's denial of summary judgment as to the individual Board members.