**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0338n.06

**No. 09-4223**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**May 20, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| KEITH L. SIGLER; SUSAN SIGLER, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| CITY OF ENGLEWOOD, et al. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ERIC A. SMITH; MARK BROWNFIELD, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: BATCHELDER, Chief Judge, and KEITH, ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Plaintiff Keith Sigler was terminated by the City of Englewood from his job as a police officer after his wife distributed a handbill that contained comments highly critical of the city's police department. Sigler brought suit against two superior officers and the city, claiming among other things that his termination violated his constitutional right of marital association. The defendants now appeal an interlocutory order of the district court denying qualified immunity. Under the facts assumed by the district court, however, plaintiff's claim is consistent with the clearly established law of this circuit. And because the order appealed from did not dispose of the entire litigation, we generally lack jurisdiction to review the factual assumptions made by the

district court. There is therefore no basis for us to reverse the district court's denial of qualified immunity at the stage of the litigation, except with respect to one defendant who did not take any direct part in Sigler's termination.

Sigler, a former police officer with the Englewood police department, was terminated on March 21, 2006. Just before Sigler's termination, on February 7, 2006, Sigler's wife Susan wrote a letter captioned "Citizens' Awareness for Public Servants (CAPS)," which criticized the Englewood police department on a variety of matters. Mrs. Sigler circulated this letter to approximately thirty individuals in or around Englewood.

Sigler said he did not know that his wife planned on mailing the CAPS letter and even denied reading the letter until his wife had already left their house to mail it. Sigler denied playing any part in drafting the letter. He reluctantly agreed that the letter could create doubt in a reader's mind about the propriety of Englewood's activities. Although Sigler talked to his wife about the CAPS letter after she returned from mailing it, he did not report his knowledge of the letter to the police department. Sigler explained that he felt he had no obligation to do so.

The police department soon became aware of the CAPS letter. Sgt. David Pelkey conducted an internal investigation concerning it. On February 14, 2006, Pelkey questioned Sigler about his involvement in the writing or distribution of the letter. Pelkey says Sigler explicitly denied having previously seen the letter, while Sigler claims he only asked Pelkey for a copy of it. On March 15, 2006, Sigler admitted that he had seen the CAPS letter shortly after his wife wrote and mailed it.

On March 21, 2006, Pelkey recommended to defendant Eric Smith, Englewood's city manager, that Sigler be terminated. Smith accepted Pelkey's recommendation and terminated Sigler.

While Smith says defendant Mark Brownfield, Englewood's police chief, "did not participate in the termination process," Sigler claims Brownfield initiated the internal investigation and that Smith consulted with Brownfield on the termination. Smith claims Sigler was terminated for the reasons stated in the record of disciplinary action. The listed termination reasons relevant to this appeal include: (1) Sigler "falsely denied having seen the [CAPS letter]"; (2) Sigler "had knowledge of who was responsible for developing and mailing the [CAPS letter]; and (3) Sigler "did not feel a duty to report that the correspondence containing inflammatory information regarding [his] employer was going to be mailed and circulated and, thereby, [Sigler] was a participant." Smith claimed Sigler's conduct violated Englewood police orders and rules that, among other things, prohibit "[d]eliberately withholding information, or providing untruthful information, related to work from supervisors or others requiring the information," namely, Police Department General Order 1.1.2 and Englewood Rules of Merit Employment Article 4-23, Standards I, IV, and VII.

Sigler filed suit below, alleging that he was terminated as unconstitutional retaliation for his wife's writing and circulating the CAPS letter, and not for violations of the cited regulations. The district court interpreted Sigler's complaint to allege that his termination was retaliation on the basis of his marriage, violating his freedom of intimate or marital association. The individual defendants moved for summary judgment on qualified immunity grounds, arguing (1) they did not terminate Sigler in retaliation for his marriage and thus did not violate his right of marital association, and (2) even if they did violate Sigler's constitutional rights, the specific right alleged was not clearly established law.

The district court denied the motion. The court determined that Sigler's case was not distinguishable from *Adkins v. Board of Education*, 982 F.2d 952 (6th Cir. 1993), and *Sowards v. Loudon County*, 203 F.3d 426 (6th Cir. 2000), cases in which this court upheld marital-association retaliation claims. The district court held that Sigler had presented sufficient evidence to create a genuine issue of material fact as to whether he established a prima facie case of First Amendment retaliation. The district court also concluded that Sigler's right of marital association was clearly established law. Accordingly, defendants were not entitled to qualified immunity. The defendants now appeal the denial of summary judgment.

If Sigler was fired because he was married to Susan, rather than because of his own actions, then the clearly established law of this circuit permits recovery under 42 U.S.C. § 1983, and qualified immunity is not warranted. Qualified immunity is not warranted if Sigler's constitutional rights were violated, and his rights were so clearly established that a reasonable person would have known of them. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This court has squarely held—in the *Adkins* and *Sowards* cases, *supra*—that the constitutional right of marital association recognized in *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), provides a basis for recovery in the particular context of termination of government employment in retaliation for one's intimate or marital association.

*Adkins* and *Sowards* directly support Sigler's claim. In *Adkins*, the plaintiff claimed that the superintendent of a county school system punished her for her association with her husband by refusing to rehire her, violating her First Amendment rights of privacy and association. *Adkins*, 982 F.2d at 953. The plaintiff's husband was her school's principal and had angered the defendant

superintendent by refusing to give negative evaluations to several teachers the defendant wanted to fire. *Id.* Allegedly in retaliation for this, the defendant refused to rehire the plaintiff, supposedly telling her, "I can't get rid of Diral [her husband], and you're the next best thing." *Id.* at 954. The superintendent and the other defendants argued that they did not interfere with the plaintiff's marriage simply by refusing to rehire her, as they did not require her to obtain a divorce or otherwise intrude into her marital relationship. *Id.* at 955. The district court directed a verdict for the superintendent on qualified immunity grounds. *Id.* at 954.

This court held that the plaintiff had made a prima facie case for her retaliation claim, and reversed. *Id.* at 956. We stated that "[t]he evidence was clearly sufficient to support a jury determination that [the superintendent] refused to recommend the plaintiff for continued employment because of her marriage to Diral Adkins." *Id.* at 955. We explained that the defendant could not retaliate against the plaintiff simply because she was married to an individual with whom the defendant was unhappy. We dismissed the defendants' argument that they had not "interfered" with the plaintiff's marriage by explaining that "it is not necessary that the governmental act require the abandonment or dissolution of a marriage relationship as the price for retaining public employment. The right of association is violated if the action constitutes an 'undue intrusion' by the state into the marriage relationship." *Id.* at 956. We remanded so the defendants could offer proof that the plaintiff's marriage was not a "substantial" or "motivating factor" in their decision to not rehire her and that they would not have rehired the plaintiff "even in the absence of the protected conduct." *Id.* at 957 (citing *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Similarly, in *Sowards*, the plaintiff alleged she was terminated from her position as jailer in retaliation for her right of marital association with her husband, an unsuccessful opponent of the defendant sheriff in a recent primary election. *Sowards*, 203 F.3d at 429-30. The plaintiff claimed that after her husband announced his candidacy for the defendant's office, her supervisors ostracized her, she was disciplined more harshly than co-workers, and she was ultimately terminated for making a single mistake—missing an outstanding warrant. *Id.* at 430. The district court dismissed the claim, reasoning that no rational juror could find that the plaintiff's termination was substantially motivated by her exercise of her rights of political or marital association. *Id.* at 431.

Reversing, we held that the plaintiff had "establish[ed] that she was engaged in the protected conduct of intimate association under the First Amendment" because she "claim[ed] that [the defendant] dismissed her because of her protected relationship with her husband, which could constitute an undue interference in that relationship under *Adkins*." *Id.* at 433. We concluded that the plaintiff's dismissal qualified as "adverse action," that she had presented sufficient evidence of "causation" between the protected activity and the dismissal, and that the law was clearly established such that the defendants could not claim qualified immunity. *Id.* at 433-40.

*Adkins* and *Sowards* control Sigler's case. As in those cases, Sigler alleged he was actually or effectively terminated because of his spouse's activities, activities that had apparently offended the defendants. In *Adkins* and *Sowards*, we treated such claims as based on retaliation due to the plaintiffs' marital associations, and held the allegations sufficient to state a First Amendment retaliation claim. In *Sowards*, we squarely held that the right to be free from adverse actions of this

type on such a basis was clearly established. Such a conclusion is compelled here, assuming that Sigler was fired based on his employer's displeasure with Sigler's wife.

The defendants argue that *Adkins* and *Sowards* are distinguishable because they contain stronger evidence that the terminations were motivated by the marital associations than in Sigler's case, and because Sigler admitted that he did not inform the defendants of his wife's letter—the supposed non-retaliatory reason for his termination. These arguments are not persuasive. The relative strength of the motivation evidence and Sigler's admission go only toward whether Sigler's being married to his wife caused his termination, and whether the defendants would have terminated Sigler even absent any "constitutionally protected activity." These are essentially factual arguments going to the state of the factual record, as explained below. If assumed in favor of the plaintiff, as the district court apparently did, then there is no error of law warranting reversal of the denial of qualified immunity.

Defendants cite *Harris v. Butler County*, 344 F. App'x 195 (6th Cir. Aug. 27, 2009), for the proposition that Sigler cannot establish any "constitutionally protected activity" because he can prove no "undue intrusion" into his marital association. As an unpublished opinion, however, *Harris* can cast no doubt on the legal holdings of our clear published opinions in *Adkins* and *Sowards*.

Defendants argue that Sigler's termination was not an "adverse action" required for an *Adkins/Sowards* claim because the termination was "not meant to deter a person of ordinary firmness from continuing to engage in" constitutionally protected activity, and that Smith instead merely relied on the city's code of ethics and rules of merit employment in terminating Sigler. This misstates the "adverse action" standard. *Sowards* posited the standard objectively, as whether "an

adverse action was taken against the plaintiff *that would deter* a person of ordinary firmness from continuing to engage in that [constitutionally protected] conduct," not subjectively, as whether the "adverse action" "was meant to deter" such a person. *See Sowards*, 203 F.3d at 431 (emphasis added).

Defendants finally argue that Sigler's alleged constitutional right should be construed more narrowly in determining whether it is "clearly established law." Defendants characterize the right as "whether a reasonable officer or official, standing in place of City Manager Smith or Chief Brownfield, would conclude that his actions violated Keith Sigler's First Amendment intimate association rights *when Keith Sigler was terminated for violating the [City's] lawful rules and regulations.*" Phrasing it this way turns the qualified-immunity analysis upside down. When deciding whether a constitutional right is "clearly established law," one assumes that the right the plaintiff invokes was actually violated. Qualified immunity then excuses that violation if the right was not "clearly established law" such that the defendant should have known of it. The right Sigler invokes is the right not to be terminated in retaliation for his marital association. Assuming that Sigler was so retaliated against, defendants are only entitled to qualified immunity if it was not clearly established that *such retaliation* is unconstitutional. Defendants' characterization assumes away any retaliatory motive, which is Sigler's whole complaint, and instead assumes as true their purported motive for Sigler's termination. The court does not decide qualified immunity in so backwards a way.

Defendants also make the essentially factual arguments that (1) the evidence was not sufficient for a jury to find "causation" between Sigler's termination and his "constitutionally

protected activity," *i.e.*, that the defendants terminated him in retaliation for his marital association; and (2) the defendants would have terminated Sigler even absent any "constitutionally protected activity." (The individual defendants would receive qualified immunity if they could prove by a preponderance of the evidence that they would have committed the "adverse action" even absent Sigler's "constitutionally protected activity." *See Mt. Healthy*, 429 U.S. at 287.)

However, if the district court found sufficient evidence in the record to deny summary judgment on these factual issues, we lack jurisdiction to review such factual determinations. On an appeal from the *denial* of a qualified-immunity summary-judgment motion, *Johnson v. Jones*, 515 U.S. 304 (1995), precludes the court from reviewing such sufficiency-of-the-record factual issues. *Johnson* recognized that interlocutory appeals could be used to review the "purely legal question" of whether the given set of facts assumed by the district court violated "clearly established" law, *id.* at 319, but not the district court's determination that there was a "genuine issue of material fact," *id.* at 313. Instead, we must assume the validity of the district court's factual conclusions. *See Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 537 (6th Cir. 2002). If it is not clear whether the district court was making a factual, as opposed to a legal, determination, then the Supreme Court instructs that we are to do our best to figure out what facts the lower court likely assumed when making its legal determination. *Johnson*, 515 U.S. at 319.

Here, the district court determined that a jury could find "causation" between Smith's termination of Sigler and Sigler's right of marital association. The court held that there is a genuine issue of material fact whether Sigler lied about his knowledge of the CAPS letter. The court concluded that "there is a question of fact as to whether this alleged wrongdoing motivated the City's

decision to terminate him, in whole or in part, vis-a-vis his failure to report the letter and/or Susan's authorship of the letter . . . ." The district court also implicitly held that the defendants might not be able to prove that they would have terminated Sigler even if he had not been married to Susan. The court dismissed the defendants' only evidence on this point—Smith's declaration that he would still have terminated Sigler—by stating that "[t]his, of course, is mere supposition." While abbreviated, both determinations indicate that the district court concluded that there was enough in the record to get to the jury on the questions of whether the marriage caused the termination and whether Sigler would not have been terminated if, other things being the same, he had not been married to Susan. For purposes of this interlocutory appeal, we must make the same assumptions. The alternative would be to read into the district court's holding a legal determination that Smith could be liable regardless of the extent to which Sigler's being married caused the termination. It is hard to read the court's analysis that way. We therefore lack jurisdiction to consider Smith's arguments to the extent that they challenge the factual assumptions of the district court regarding causation.

With respect to Brownfield, however, there is no basis in the district court's opinion to support an assumption that Brownfield committed an "adverse action" against Sigler. "Each defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). The legal conclusion is therefore required that Brownfield did not violate Sigler's constitutional rights and that he is entitled to qualified immunity.

While Sigler alleges that Brownfield also was "involved" in the termination decision, he presented no evidence to support his assertion. Sigler alleged that Brownfield initiated the internal investigation that led to the termination and consulted with Smith on the decision. The transcript

evidence Sigler cites to prove this shows only that: (1) Brownfield met with Pelkey and two or three other police department employees to discuss the CAPS letter; (2) those individuals, together, decided to initiate an internal investigation, in which Brownfield would not be involved; and (3) Smith told Brownfield of the investigation's results and that he (Smith) agreed with the dismissal recommendation. Brownfield's participation in the decision to initiate the internal investigation, without more, does not support Sigler's allegations that Brownfield was "involved" in the termination decision such that he too committed an "adverse action." It is not disputed that Smith formally removed Brownfield from the report and decision-making process regarding Sigler due to potential conflicts of interest. At most, Sigler's evidence reflects inconsequential, *de minimis* acts that, as a matter of law, are simply not cognizable as "adverse action." *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). Sigler's claim against Brownfield must fail unless Brownfield committed an "adverse action" against Sigler, and there is no basis to conclude that the district court assumed sufficient facts in the record to make such a conclusion. It was accordingly legal error to deny Brownfield qualified immunity.

As to the appeal by the City of Englewood, we have jurisdiction only if it is proper to exercise pendent appellate jurisdiction. "Pendent appellate jurisdiction refers to the exercise of jurisdiction over issues that ordinarily may not be reviewed on interlocutory appeal, but, may be reviewed on interlocutory appeal if those issues are inextricably intertwined with matters over which the appellate court properly and independently has jurisdiction." *Davenport v. Causey*, 521 F.3d 544, 554 (6th Cir. 2008) (internal quotation marks omitted). In light of our ruling with regard to Smith's appeal, we decline to exercise such pendent appellate jurisdiction in this case. *See, e.g.,*

*Floyd v. City of Detroit*, 518 F.3d 398, 411 (6th Cir. 2008) (declining to exercise pendent appellate jurisdiction over question of city-defendant's liability in 42 U.S.C. § 1983 action where individual officer-defendants held not entitled to qualified immunity); *Lane v. City of LaFollette, Tenn.*, 490 F.3d 410, 423-24 (6th Cir. 2007) (same). We of course take no position on any issues that relate solely to the city's possible liability.

The judgment of the district court denying the motion for summary judgment is affirmed with respect to defendant Smith. The judgment denying the motion for summary judgment is reversed with respect to Brownfield. The appeal of the City of Englewood is dismissed for lack of appellate jurisdiction.