**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0560n.06

No. 10-2453

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*May 30, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| ERICKA SAVAGE, | ) | |
| | ) | |
| Plaintiff–Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| CITY OF PONTIAC, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| FRED LEEB, LARRY MARSHALL, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before:  MOORE, GIBBONS, and ALARCÓN, Circuit Judges.[*]

**JULIA SMITH GIBBONS, Circuit Judge.**  Ericka Savage, a former legislative auditor for

the City of Pontiac, was terminated from her employment without cause and without pretermination

process.  She sued the City of Pontiac, its Emergency Financial Manager Fred Leeb, and its human

resources head Larry Marshall.  The district court concluded that Savage's termination violated her

due process rights, denied Leeb and Marshall qualified immunity, and entered summary judgment

in her favor against Leeb and the City of Pontiac.  It found that questions of fact precluded the entry

of summary judgment in Savage's favor against Marshall.

For the reasons below, we affirm.

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge of the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

**I.**

Ericka Savage was hired as the legislative auditor by a resolution of the Pontiac City Council in 2006. She began a three-year term on December 4, 2006. Before her term expired, the City Council passed another resolution extending her term until December 4, 2010.

The City of Pontiac's Home Rule Charter (Charter) governs the functions and powers of the Pontiac City Council. The Charter empowers the City Council to "provide for the office of Legislative Auditor" and "appoint the Auditor for a term of not less than four (4) years." In addition, the Charter limits how an auditor may be terminated: an "Auditor may be removed by not less than five (5) Council members only for cause." A "removal for cause" is defined as removal for "lack of qualifications, incompetency, neglect of duties, misconduct, conviction of a felony, or violation of this charter or any job-related ordinance, rule or regulation." Further, under the Charter, an appointee cannot be removed for cause "without an opportunity for a public hearing before the appointing authority" and must be provided with a copy of the charge against him or her in advance of the hearing.

In February 2009, the Governor of Michigan determined that a financial emergency existed in the City of Pontiac (Pontiac). In March 2009, the Local Emergency Financial Assistance Loan Board, a state agency, appointed Fred Leeb as Emergency Financial Manager (EFM) for Pontiac. As EFM, Leeb was vested with a host of powers to remedy Pontiac's grave financial problems. On June 18, 2009, Leeb notified Savage that he was eliminating her position as legislative auditor. Leeb sent Savage a letter that stated, in relevant part:

> Due to the financial emergency that exists within the City of Pontiac I am faced with the difficult task of making major adjustments to the operations of the municipality. It is therefore with great regret that I must inform you that your position as Legislative Auditor will be eliminated. You will be compensated through the end of business on June 26th, 2009.

The letter was typed on the letterhead of the human resources department, the director of which is Larry Marshall. Apart from the letter itself, Savage was not given any reason for her termination and was not provided any prior notice or opportunity to be heard.

Savage brought suit under 42 U.S.C. § 1983, the Michigan Constitution, and the common law of contracts against Pontiac, as well as Leeb and Marshall in their individual and official capacities, arguing that her termination violated her due process rights and violated her employment contract. Both Savage and the defendants moved for summary judgment, and the district court granted in part and denied in part both parties' motions for summary judgment.

The district court first found that although Michigan law permitted EFMs to remove heads of departments, Savage was not head of a department, pursuant to the express terms of the Charter. Rather, Savage was "an appointed employee, nothing more." Accordingly, the court concluded that Savage had a property interest in her continued employment, was deprived of that interest, and was not afforded any process prior to her termination—a violation of her constitutional rights. The district court then rejected Leeb's and Marshall's claims of qualified immunity. Noting the just cause and hearing provisions in the Charter, as well as the fixed term of Savage's employment, the district court found that "[a]ny reasonable officer would know that termination from that job without some measure of process was unreasonable." Thus, the district court held that Savage was "entitled

to recover from defendants City of Pontiac and Fred Leeb as a matter of law, but fact questions preclude summary judgment in her favor against defendant Marshall." Savage was entitled to a partial judgment on liability, as she presented no proof of damages.[1] Leeb and Marshall appealed; Pontiac did not.

## II.

We review the district court's grant of summary judgment *de novo*. *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010). Summary judgment is only "appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (citing Fed. R. Civ. P. 56(c)). "The moving party bears the burden of proving that there are no genuine issues of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

Because an appeal from a denial of qualified immunity is interlocutory, *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 399 (6th Cir. 2009), our jurisdiction is narrow—extending only to the "purely legal question of whether the facts alleged . . . support a claim of violation of clearly

---

[1]The district court dismissed with prejudice Savage's claim under the Michigan Constitution, and Savage has not cross-appealed that issue.

established law." *Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998) (internal quotation marks omitted). Accordingly, even if the "defendant disputes the plaintiff's version of the story, the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Id.* at 563. Nonetheless, if there is no basis in the district court's opinion to support an assumption that an individual defendant was involved in the constitutional wrong, this court may reverse a district court's denial of qualified immunity. *See Sigler v. City of Englewood*, 424 F. App'x 449, 455 (6th Cir. 2011).

## III.

Savage filed suit under 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). Qualified immunity is an affirmative defense to a § 1983 suit and shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "This 'objective legal reasonableness' standard analyzes claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful . . . ." *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011). Thus, to determine the merits of a qualified immunity defense, we "engage in a two-step analysis: (1) whether, considering the allegations in a light most

favorable to the party injured, a constitutional right has been violated, and if so, (2) whether that right was clearly established." *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006). We may consider these two prongs in either order. *Cochran*, 656 F.3d at 306.

## A.

Leeb and Marshall first argue that Savage did not have a property interest in her continued employment as a Pontiac's Legislative Auditor. The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Albrecht v. Treon*, 617 F.3d 890, 894 (6th Cir. 2010) (internal quotation marks omitted). Property rights are "principally created by state law," but "whether a substantive interest created by the state rises to the level of a constitutionally protected property interest is a question of federal constitutional law." *Id.* (internal quotation marks omitted). Where "public employees . . . can only be fired for cause, the Supreme Court has held, specifically, that a pretermination proceeding is required." *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004); *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–48 (1985).

There is no dispute that Savage did not receive any type of pretermination process. Thus, whether Savage's constitutional rights were violated depends entirely upon whether she had a property interest in her continued employment with Pontiac—and that question, in turn, depends

upon whether Savage was a "department head" within the meaning of the Charter. If Savage was a "department head," then she had no property interest in her employment because Michigan's Local Government and School District Fiscal Accountability Act (LGFRA) allows the EFM to remove "heads of department" at his discretion:

> An emergency financial manager may take 1 or more of the following additional actions with respect to a unit of local government . . . *Notwithstanding the provisions of any charter to the contrary*, consolidate departments of the unit of local government or transfer functions from 1 department to another and to appoint, supervise, *and, at his or her discretion, remove heads of departments* other than elected officials, the clerk of the unit of local government, and any ombudsman position in the unit of local government.

Mich. Comp. Laws § 141.1221(1)(i) (2009) (emphases added), *repealed by* Local Government and School District Fiscal Accountability Act, 2011 Mich. Legis. Serv. P.A. 4 (West).

There is ample evidence that Savage was not a "department head" and thus the provisions of the LGFRA did not allow her to be terminated without cause. Michigan's Home Rule City Act states that "[e]ach city may in its charter provide . . . [f]or the establishment of any department that it may deem necessary for the general welfare of the city[.]" Mich. Comp. Laws § 117.4j(1). Pontiac, pursuant to this authority, provides in its Charter for the office of the Mayor, as well as various departments within the executive branch, including the Finance Department, Police Department, and Fire Department. The Charter also provides that "[o]ther departments, not created by this charter, for performance of executive and administrative functions may be created in the executive branch by ordinance[.]" To run departments, the Mayor appoints a "director," and his

appointment is subject to the approval of the City Council. The Charter defines a "director" as the "administrative head of a department[.]"

Savage was appointed by resolution of the City Council, not by the Mayor. This fact is significant because the Mayor, subject to the City Council's approval, appoints "directors," *i.e.*, "department heads," while the City Council "provide[s] for the Office of the Legislative Auditor" and "appoint[s] the Auditor"—and here appointed Savage.[2] Simply put, because the Mayor was not involved in Savage's appointment, she cannot be considered a head of department under the Charter. Furthermore, in its resolution, the City Council clearly intended Savage to have a fixed term of employment for four years. Given the plain terms of the Charter, Savage was not a "head of department."[3] Accordingly, Savage had a property interest in her continued employment with Pontiac and her termination violated her constitutional rights.

---

[2]The positions of director/department head and "appointee" are functionally distinct and defined separately in the Charter.

[3]Leeb and Marshall note that the LGFRA does not define "head of department" and therefore resort to expansive dictionary definitions to define these terms. However, Leeb and Marshall cite no authority which would permit us to overlook the express terms of the Charter. Further, under the Michigan Home Rule Act, municipalities have the power to create departments, Mich. Comp. Laws § 117.4j(1)—and the power to create departments must include the power to define them, absent a contrary indication under state law. That is exactly what Pontiac has done by defining how departments are created and how directors are selected. We find it hard to believe that the Michigan legislature, by not defining "head of department" in the LGFRA, invited courts to ignore any city charter provision defining "heads of department" in favor of definitions drawn from a dictionary. This approach would seem to undermine the whole purpose behind the Home Rule Act itself, which, risking redundance, is "to give the city a large measure of home rule." *City Comm'n of Jackson v. Hirschman*, 235 N.W. 265, 266 (Mich. 1931).

**B.**

To determine whether Leeb and Marshall were responsible for violating Savage's

constitutional rights, we must consider their conduct separately because "[e]ach defendant's liability

must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650

(6th Cir. 2010). To be held liable in a § 1983 suit in the employment context, a state official must

commit more than a *de minimis* act leading to the plaintiff's termination. *See Sigler*, 424 F. App'x

at 455 (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)).

There is no dispute that Leeb wrote and signed the letter terminating Savage and is therefore

responsible for violating her due process rights. Marshall, Pontiac's head of human resources,

presents a somewhat closer case. Marshall argues that the mere fact that the termination letter was

written on the letterhead of the human resources department—the department he directs—is

insufficient to infer his liability at this stage of the litigation.[4] The district court found that "[t]his

evidence is sufficient to permit this court to infer defendant Marshall's liability in the plaintiff's

termination, but it does not conclusively establish his liability as a matter of law." We agree.

In her complaint, Savage alleged that "at the direction of Leeb and Marshall, [she] was

humiliatingly escorted out of her office," that "Leeb and Marshall act[ed] with the authority of the

---

[4]It does not appear that Marshall's argument rests on disputed issues of material fact, which would preclude us from reviewing his argument on an interlocutory appeal of a denial of qualified immunity. *See Cate v. City of Rockwood*, 241 F. App'x 231, 235 (6th Cir. 2011) (*per curiam*) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 744) (6th Cir. 2006)). Rather, it appears that Marshall accepts what Savage has alleged and merely argues that those allegations are insufficient to support the inference the district court found permissible. Thus, we have jurisdiction to review his argument. *See id.*

City of Pontiac and their acts are attributable to the City," and that "Leeb and Marshall carried out their official policies, order and directives intentionally and deliberately . . . with wanton and reckless disregard" for Savage's constitutional rights. These allegations suggest some measure of personal involvement in Savage's termination decision. Moreover, when viewed in the light most favorable to Savage, *see Berryman*, 150 F.3d at 563, the fact that Marshall heads the department of human resources and the fact that Leeb wrote the termination letter on human resources letterhead also implicate Marshall. This evidence is sufficient to infer that Marshall played more than a *de minimis* role in the decision to termination Savage. *Compare Sigler*, 424 F. App'x at 450–51, 455 (reversing denial of qualified immunity in § 1983 suit where it was undisputed that the defendant had been "formally removed" from the decision-making process leading to the termination and the evidence "[a]t most . . . reflect[ed] inconsequential, *de minimis* acts" by the defendant), *with Cate v. City of Rockwood*, 241 F. App'x 231, 235–36 (6th Cir. 2007) (*per curiam*) (affirming denial of qualified immunity to Water Board members in § 1983 suit where evidence showed that the Board had been involved with plaintiff's termination because the Mayor had told plaintiff that the Board had eliminated his position and plaintiff had been transferred immediately after a Board meeting).

Accordingly, the district court correctly concluded that the evidence at this stage of the litigation is sufficient to infer but not establish Marshall's liability as a matter of law.

**IV.**

Because Savage's due process rights were violated, we must determine whether Leeb is nonetheless entitled to qualified immunity on grounds that Savage's termination did not violate her

clearly established rights.[5]  "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)).  The exact action in question need not have previously been held unlawful by courts, but the unlawfulness must be "apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Id.*  The critical question is whether it "'would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.'" *Slusher v. Carson*, 540 F.3d 449, 456 (6th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Prior to Savage's termination in 2009, "Supreme Court precedent had clearly established that a pre-termination hearing is required before terminating an employee who holds a property interest in her employment . . . ." *See Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006); *see also Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 767 (6th Cir. 2010).  Leeb does not appear to dispute the general premise that employees with a property interest in their employment have a clearly established right to pretermination hearing; instead, he argues that there was enough confusion over whether Savage was a department head that a reasonable official would not know that terminating her would violate her clearly established rights.  *See Silberstein*, 440 F.3d at 316 ("The Board Members do not dispute that a City of Dayton employee in the classified service had a clearly

---

[5]This qualified immunity analysis also applies to Marshall but will only be relevant if on remand the evidence establishes Marshall's liability for his involvement in Savage's termination.

established right to a pre-termination hearing . . .; rather, they argue that [plaintiff's] status as a classified employee is disputable such that a reasonable person would not know that he or she was violating [plaintiff's] rights.").

*Silberstein* considered whether it was clearly established that the plaintiff was an unclassified or classified employee (only the latter had a property right and was entitled to due process protections). *Id.* at 311–12, 316–17. This court concluded that the plaintiff's status as a classified employee was clearly established based on "not only the plain language of the Charter but also by general understanding and practice." *Id.* at 317. The language of the Charter was fairly clear, and "everything about the city's own treatment of [plaintiff's] position and other, similar positions within her division further support[ed] the conclusion" that her classified employee status was clearly established. *Id.*

The Charter's terms here are at least as clear as the Charter's terms in *Silberstein*. The Charter provides that an auditor—the very title given to Savage—may be removed only for cause. Further, Savage was appointed for a fixed term of employment as the Charter provides. As Part III.A, *supra*, demonstrates, under the plain terms of the Charter, the Mayor appoints "directors" or "administrative heads of departments" to run departments, and because Savage was appointed by the City Council, not the Mayor, she is not a department head.

Despite these clear terms, Leeb maintains that there was some degree of confusion over whether Savage was a department head or not given her actual job functions. He cites Marshall's affidavit, in which Marshall stated that "[d]espite the fact that the appointment process is different,

I consider the Legislative Auditor to be a department head," and listed various ways in which the Legislative Auditor supposedly functioned as a department head. This argument does not undermine our conclusion that Savage's rights were clearly established. First, Marshall himself admits in his affidavit that the appointment process for the Legislative Auditor is "different" from the process generally used for appointing department heads, which requires a department head to be appointed by the Mayor. Second, although we may consider "general understanding and practice" when determining an employee's true status, *Silberstein*, 440 F.3d at 317, Marshall's single affidavit falls far short of establishing that, as a general matter, Legislative Auditors in Pontiac were viewed or treated as department heads. In *Silberstein*, "[n]umerous facts on the record demonstrate[d] that [plaintiff's] position was generally understood to be classified," such as the treatment of former employees, the procedures the plaintiff followed to obtain her job, previous legal opinions on her status issued by the municipality, and the particular functions that she performed. *Id.*; *see also Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 567–68 (6th Cir. 2004) (finding that right to pretermination hearing was clearly established based on uncontested testimony that for twenty five years, not one employee had been terminated without a hearing). No such wealth of evidence exists here. Third, and perhaps most importantly, Leeb cites no authority that would allow this court to disregard entirely the plain terms of the Charter in favor of the loose, functional approach he urges.

A reasonable official in Leeb's position would have known that Savage could be terminated only for cause based on the City Council resolution that provided for a fixed term of appointment and her designation as "Auditor" under the Charter. A reasonable official would also have known,

by consulting the plain terms of the Charter, that Savage was not a department head because she was

not appointed by the Mayor. Thus, Leeb is not entitled to qualified immunity.[6]

**V.**

For the foregoing reasons, we affirm the decision of the district court.

---

[6]We do not reach Leeb's argument that he is immune under the Eleventh Amendment. Although defendants "may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity," *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993), here Leeb did not raise this issue before the district court and therefore there has been no judgment denying him Eleventh Amendment immunity from which he would be entitled to immediately appeal.